FILED

2014 JAN 28 PM 4: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1   Christopher M. Burke (214799)
2   cburke@scott-scott.com
    Hal D. Cunningham (243048)
3   hcunningham@scott-scott.com
    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
4   4771 Cromwell Avenue
5   Los Angeles, CA 90027
    Telephone: 213-985-1274
6   Facsimile: 213-985-1278
7
8   *Counsel for Plaintiff*
9   [Additional Counsel on Signature Page]
10
11                UNITED STATES DISTRICT COURT
12                CENTRAL DISTRICT OF CALIFORNIA
13                     WESTERN DIVISION

ANGEL AGUIAR, Individually and on     No. CV14-00670-RGK(AGRx)
Behalf of All Others Similarly Situated,

                  Plaintiff,           CLASS ACTION COMPLAINT

        vs.                            DEMAND FOR JURY TRIAL

MERISANT COMPANY, and WHOLE
EARTH SWEETENER CO., LLC,

                  Defendants.

                                       CLASS ACTION COMPLAINT

Plaintiff Angel Aguiar ("Plaintiff") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by Merisant Company ("Merisant") and Whole Earth Sweetener Co., LLC ("Whole Earth") (collectively, "Defendants") as to all other matters.   Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendants with respect to the marketing, advertising, labeling, and sales of PureVia® Stevia (the "Product" or "PureVia").

2.     Merisant was formed on March 20, 2000 and manufactures PureVia, Equal®, and Canderel® and over a dozen other products.  Whole Earth is a wholly owned subsidiary of Merisant.

3.     All Defendants recognize that consumers are increasingly health conscious.  At the same time, PepsiCo., Inc. ("Pepsi")  faced potentially large losses to its main rival,  The Coca-Cola Company ("Coca-Cola"), who had developed an alternative tabletop sweeter product, branded as Truvía® Natural Sweetener ("Truvia").

4.     To meet this threat, Defendants, jointly with Pepsi, developed a competing product, PureVia.  Like Truvia, PureVia purports to derive largely from an extract of the leaf of the stevia plant, high purity *Rebaudioside A* ("Reb A"). Defendants use Reb A as an ingredient in PureVia and tout it as a "great tasting all natural alternative to sugar."

5.     Since as early as 2008 ("Class Period"), Defendants have manufactured, distributed, and sold PureVia and consistently have marketed,

1

1 advertised, and labeled PureVia as a natural sweetener primarily made from the
2 stevia plant.

3      6.    As part of a scheme to make PureVia more attractive to consumers,
4 boost their sales, and ultimately increase profits, Defendants use terms such as
5 "made from ingredients found in nature" and "the all natural way to keep calories
6 low," and natural imagery such as the leaves of the stevia plant in labeling,
7 advertising, and marketing materials.  The use of these terms and natural imagery
8 is designed to, and does, induce consumers, such as Plaintiff and the members of
9 the putative classes, into believing that PureVia is a natural sweetener primarily
10 made from the stevia plant that does not contain ingredients that are either
11 synthetic or harshly chemically processed and, therefore, is a healthy choice and is
12 superior to competing sugar-alternative sweeteners that do not claim to be natural.

13      7.    However, Defendants' labeling, advertising, and marketing campaign
14 is false and misleading because: (1) Defendants tout the stevia plant as the reason
15 PureVia is natural (the "pure extract of the naturally sweet stevia plant is the secret
16 to PureVia's sweetness"), when, in fact, the stevia-derived ingredient, Reb A, is
17 not the natural crude preparation of stevia, but rather is a highly chemically
18 processed and purified form of stevia leaf extract; (2) the stevia-derived Reb A
19 comprises **only a small percent** of PureVia; (3) Defendants describe the process of
20 obtaining stevia leaf extract as similar to making tea, but do not tell the consumer
21 that Defendants then add ethanol, methanol, or rubbing alcohol to this so-called
22 "tea" in a patented multi-step process to purify it.  In short, PureVia is not made
23 primarily from the stevia plant and contains only a minute quantity of stevia-
24 derived Reb A (not natural crude stevia); the remaining ingredients are not natural,
25 but synthetic or genetically modified; and, the stevia-derived Reb A is harshly
26 purified through chemical processes.  As a result, no reasonable consumer would
27 consider PureVia to be a natural product.

28

CLASS ACTION COMPLAINT

8.     When purchasing PureVia, Plaintiff relied on Defendants' misrepresentations that PureVia is a natural sweetener primarily made from the stevia plant.   Plaintiff and the Classes paid a premium for PureVia over comparable sugar-alternative sweeteners that did not purport to be natural. PureVia is consistently more expensive per packet than sugar-alternative competitors, like  Equal and Sweet 'N Low, costing *approximately ten times more per packet than Sweet 'N Low and at least twice as much more per packet than Equal*.   Plaintiff would not have purchased PureVia had she known the truth. Plaintiff suffered an injury by purchasing the Product at inflated prices.   Plaintiff did not receive a natural sweetener primarily made from the stevia plant; rather, she received a product that is made predominantly of synthetic ingredients with only a miniscule amount of Reb A, which itself is harshly chemically purified, in contradiction to Defendants' representations.

9.     Defendants' conduct of falsely marketing, advertising, labeling, and selling PureVia as a natural sweetener primarily made from the stevia plant constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services.   As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendants' PureVia (the "Class").   Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in California of Defendants' PureVia (the "California Class").

## JURISDICTION AND VENUE

10.     Pursuant to Local Rule 8.1, this Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act.

3

Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed classes are citizens of a state different from that of Defendants. Personal jurisdiction is proper as Defendants have advertised, marketed, and sold PureVia to Plaintiff and other consumers in this District and have purposefully availed themselves of the privilege of conducting business activities within this District.

11. Defendants Merisant (a citizen of Illinois and Delaware) and Whole Earth (a citizen of Illinois and Delaware), have distributed, marketed, advertised, labeled, and sold PureVia, which is the subject of the present complaint, in this District. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendants are deemed to reside in this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendants are deemed to reside in this District and under 28 U.S.C. §1391(b)(2) because Defendants conduct business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

**PARTIES**

12. Plaintiff Angel Aguiar is a citizen of California and an individual consumer. During the Class Period, Plaintiff Angel Aguiar purchased PureVia. Specifically, in February, May, August, and October, 2013 and on or about January 22, 2014, Plaintiff purchased PureVia at Target in Los Angeles, California and at Albertsons in Montebello, California. Prior to purchasing the Product, Plaintiff read and relied upon false and misleading statements that were prepared by and/or approved by Defendants and their agents and disseminated through the PureVia packaging. For each purchase, she understood that she was paying for a natural sweetener primarily made from the stevia plant and was deceived when she received a product that is made predominantly of synthetic ingredients and with

1   only a miniscule amount of the stevia-derived Reb A, which is purified through a

2   harsh chemical process.  But for Defendants' misrepresentations, Plaintiff would

3   not have purchased PureVia, and/or would not have paid a premium for PureVia

4   over the price of other sugar-alternative sweeteners that are not promoted as

5   natural.  Plaintiff thus was damaged by Defendants' practices.

6          13.    Defendant Merisant is a privately held Delaware corporation,

7   headquartered at 33 North Dearborn Street, Chicago, Illinois 60602.  Defendant

8   distributes, markets, advertises, and sells PureVia in California and throughout the

9   rest of the United States.

10         14.    Defendant Whole Earth, a subsidiary of Merisant, is a privately held

11  Delaware corporation, headquartered at 33 North Dearborn Street, Chicago,

12  Illinois 60602.  Defendant distributes, markets, advertises, and sells PureVia in

13  California and throughout the rest of the United States.

14                        **ALLEGATIONS OF FACT**

15         **A.     Defendants' False and Misleading Statements**

16         15.    PureVia is manufactured, distributed, marketed, advertised, and sold

17  by Defendants to consumers as a tabletop packet sweetener for food and beverages.

18         16.    Throughout the Class Period, Defendants engaged in, and Plaintiff

19  and members of the Classes were exposed to, a long-term advertising campaign in

20  which Defendants utilized various forms of media, including, but not limited to,

21  print advertising on the PureVia label, the PureVia website, and television

22  commercials.   Since Defendants announced the launch of PureVia in 2008,

23  Defendants consistently have made certain representations in the labeling,

24  advertising, and marketing that are false and misleading.  To accomplish this,

25  Defendants use an integrated, nationwide messaging campaign to consistently

26  convey the deceptive and misleading message that PureVia is a natural sweetener

27  primarily made from the stevia plant.  This message, ***at a minimum***, is conveyed at

28

5

the point of purchase on the PureVia packaging and labeling which contains images of a natural stevia leaf and the words "all natural zero calorie sweetener." Thus, all consumers are exposed to the same message whether viewed in television commercials, on the website, or on the label:





17.    Additionally, Defendants state on the PureVia website that:

- PureVia is a "great tasting all natural alternative to sugar"
- "A pure extract of the naturally sweet stevia plant is the secret to PureVia's sweetness"

6

- PureVia is "made from ingredients found in nature"

- "PureVia is a sweet little zero calorie marvel that comes from the leaves of a plant called stevia.  The stevia plant grows sweeter day by day, with a little help from rich soil, warm sun and generous rain."

- Use PureVia "to add natural sweetness…"

- PureVia sweetener comes from nature:

Stevia Rebaudiana Bertoni (commonly called stevia) is a member of the Chrysanthemum family. Stevia is a natural herbal sweetener with no calories and no carbohydrates. The stevia leaf has been used as a sweetener for hundreds of years in South America. It is called "Ka'a He'e" ("Sweet Herb") in Paraguay.

The sweetness found in stevia comes from **several natural ingredients**. Rebaudioside A (Reb A) is the sweetest and purest extract of the stevia leaf. This natural sweetener is more than 200 times sweeter than sugar.

Which, in turn, makes Pure Via **the natural choice for people who want to live a healthier lifestyle** in addition to people with diabetes and those watching their sugar intake.

-------

A pure extract of the naturally sweet stevia plant is the secret to Pure Via's sweetness. It's called Reb A and is the sweetest and best tasting part of the stevia plant. At Whole Earth Sweetener Co., we work in partnership with <u>PureCircle</u> to ensure that Pure Via is sweetened with the highest quality of this natural sweetener. And because we work with a single company to source Reb A, we are confident in the consistent quality of this important ingredient.

**Pure Via only contains natural sweeteners**. The pure Reb A from the stevia plant that sweetens Pure Via starts with stevia leaves, which are first milled and then steeped in water using a brewing method that is **similar to brewing tea**. The resulting stevia extract is then further purified to separate the Reb A through a proprietary technology used by PureCircle.

Finally, Reb A, the sweetest part of the leaf, is extracted, purified and then **combined with other natural ingredients** to make Pure Via.

7

[Emphasis added.]

18. These statements mislead the consumer into believing that the Product is a natural sweetener primarily made from the stevia plant, when, in fact, the Product is composed of predominantly synthetic ingredients and only a minute quantity of stevia-derived Reb A, which is purified through a harsh chemical process and is not the same as natural crude stevia.

19. Plaintiff and the Classes reasonably understood the Product's packaging to mean that the Product is a natural sweetener primarily made from the stevia plant and relied on such representations in making their purchases of the Product.

**B.    PureVia Is Not Primarily Made from the Stevia Plant**

20. Although Defendants lead consumers to believe that PureVia is primarily made from the stevia plant, PureVia actually is made predominantly with synthetic isomaltulose or dextrose. From 2008 to 2010, the primary ingredient in PureVia was "isomaltulose", commonly known as Palatinose. From 2008 to the present, the top ingredient in PureVia is "dextrose." In either instance, Reb A made up less than 5% of the composition of PureVia. That PureVia is almost entirely made with a synthetic ingredient is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

21. No reasonable consumer would know or have reason to know that PureVia contains such a ***minute*** amount of the stevia-derived ingredient, Reb A. The quantity of Reb A in PureVia  is within the exclusive knowledge of Defendants and is not known to ordinary consumers, including Plaintiff and members of the Classes. Defendants actively conceal this material fact from consumers, including Plaintiff and members of the Classes. Defendants'

8

1  representations that PureVia is made from the stevia plant are, at best, an
2  incomplete, partial disclosure.

3      **PureVia Is Not a *Natural* Sweetener**

4          **1.      Reb A Is Not the Same as Natural Crude Stevia**

5      22.    Not only is there but a miniscule amount of stevia in PureVia, but the
6  highly processed, high-purity stevia extract Reb A in PureVia is not what most
7  consumers, including Plaintiff and members of the Classes, consider to be natural
8  stevia.

9      23.    Stevia typically refers to the crude stevia preparation (powder or
10 liquid), which is obtained through the ***natural process*** of drying and crushing
11 stevia leaves and then extracting them with hot water.  This natural crude stevia
12 extract can be purchased as a supplement in health food stores.  Reb A is a highly
13 purified form of stevia extract, which (as discussed below) is obtained through a
14 harsh and unnatural chemical purification process.  So, while the highly processed,
15 high purity Reb A in PureVia is derived from the stevia plant, it is not the same as
16 the natural stevia that is sold in the U.S. as a dietary supplement.  This distinction
17 is material to consumers, including Plaintiff and members of the Classes, who are
18 seeking to consume natural products.

19     24.    No reasonable consumer would know, or have reason to know, that
20 the stevia extract in PureVia is highly processed Reb A and not the natural crude
21 preparation of stevia.  This information is within the exclusive knowledge of
22 Defendants and is not known to ordinary consumers, including Plaintiff and
23 members of the Classes.  Defendants actively conceal this material fact from
24 consumers, including Plaintiff and members of the Classes.  Defendants'
25 representations that PureVia is made from the stevia plant are misleading.

26

27

28

9

### 2. The Unnatural Processing and Synthetic Manufacturing of the Ingredients in PureVia

#### a. Defendants Create High Purity Reb A Through a Harsh Chemical Process that Includes Washing Crude Stevia Extract with Ethanol, Methanol, or Rubbing Alcohol

25. Defendants obtain purified rebaudioside A through a complex, patented chemical process that begins with the extraction of the sweet glycols from the *Stevia rebaudiana* plant. U.S. Patent No. 7862845 B2 (filed Oct. 11, 2005, granted Jan. 4, 2011). The dried leaves of the *Stevia* plant are steeped in hot water for up to six hours. The water is then filtered and the pH adjusted by the addition of calcium hydroxide. After heating and cooling the filtrate, the solution is neutralized by adding ferric chloride. The precipitate that forms is filtered out of the solution and the filtrate is then deionized and decolorized by passing it through several different cation-exchange resins. The filtrate is concentrated and spray dried, resulting in a powdered extract. The powder is dissolved in methanol, warmed, and agitated to produce a precipitate of Stevioside, one of the sweet glycosides found in the *Stevia* plant extract. The precipitate is filtered from the solution. The remaining filtrate is evaporated to remove any remaining methanol and the resulting syrup diluted with water and passed through polysulfone based ultrafiltration membranes. The filtrate is concentrated and spray dried to obtain a powder of Reb A. The powder is dissolved in ethanol, agitated until a precipitate forms, and the precipitate is filtered and dried. The Reb A is further processed by mixing it again with ethanol and slowly agitating for about one hour, triggering the formation of crystals that are then filtered and dried.

26. That Reb A is obtained through a harsh chemical process is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products. Consumers, including Plaintiff and members of the

CLASS ACTION COMPLAINT

Classes, do not consider a product with an ingredient that is harshly chemically processed to be natural.

27.    For instance, the U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling. The USDA defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than *minimally processed*."  *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).  According to the USDA, minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*, smoking, roasting, freezing, drying, and fermenting. *Id.*

28.    No reasonable consumer would know, or have reason to know, that Reb A is achieved through a harsh chemical process.  This information is within the exclusive knowledge of Defendants and is not known to ordinary consumers, including Plaintiff and members of the Classes.  Defendants actively conceal this material fact from consumers, including Plaintiff and members of the Classes. Defendants' representations that PureVia is made from the stevia plant and that making stevia is "like making tea" is misleading.

### b.    Consumers Desire Natural Foods

29.    Defendants also realize that consumers are increasingly aware of the relationship between health and diet and, thus, understand the importance and value of descriptors and labels that convey to consumers that a product is natural when considering whether to buy foods.

30.    American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that

11

1    convey food quality and nutrition information to consumers that they can and do

2    use to make purchasing decisions.

3       31.    Surveys have shown that "natural" is one of the top descriptors

4    consumers consider. *See, e.g.*, David L. Ter Molen and David S. Becker, *An "All*

5    *Natural" Dilemma: As the Market for "All Natural" Foods Continues to Grow, So*

6    *Do the Risks for the Unwary* (Nov. 27, 2012) at 2,

7    http://www.freeborn.com/assets/white_papers/02.12_white-paper-natural-food-

8    update.pdf (last visited Jan. 28, 2014). Consumers desire natural ingredients in

9    food products for a myriad of reasons, including wanting to live a healthier

10    lifestyle, perceived benefits in avoiding disease, and other chronic conditions, as

11    well as to increase weight loss and avoid chemical additives in their food. *See,*

12    *e.g.,* Food Marketing Institute, *Natural and Organic Foods* (September 2008) at 1,

13    http://www.fmi.org/docs/media-backgrounder/natural_organic_foods.pdf?sfvrsn=2

14    (last visited Jan. 28, 2014). As a result, consumers are willing to pay a higher price

15    for higher quality foods, such as those that are natural. *See, e.g.*, Context

16    Marketing, *Beyond Organic: How Evolving Consumer Concerns Influence Food*

17    *Purchase* (Oct. 2009) at 6, http://www.contextmarketing.com/insights.html (last

18    visited Jan. 28, 2014).

19       32.    Although this segment of the health food market was once a niche

20    market, natural foods are increasingly becoming part of the mainstream food

21    landscape. According to Natural Foods Merchandiser, a leading information

22    provider for the natural, organic, and healthy products industry, the natural food

23    industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in

24    2009. *See Natural and Organic Products Industry Sales Hit $81 Billion, Natural*

25    *Foods Merchandiser* (June 1, 2011), http://www.prnewswire.com/news-

26    releases/natural-and-organic-products-industry-sales-hit-81-billion-

27    122958763.html (last visited Jan. 28, 2014). The market for all natural and organic

28

foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.  http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited Jan. 28, 2104). Consumer demand for all natural and organic foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015. *Id.*

33.   In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical-free benefits of natural foods, Defendants label PureVia as a natural sweetener primarily made from the stevia plant.

34.   A reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed.

35.   Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as Defendants' to honestly report the nature of a food's ingredients, and food companies such as Defendants' intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

36.   Defendants unscrupulously capitalize on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing PureVia.

CLASS ACTION COMPLAINT

## **DAMAGES TO PLAINTIFF AND THE CLASSES**

37.   Plaintiff purchased the Product based on Defendants' labeling, advertising, and marketing that the Product is a natural sweetener primarily made from the stevia plant.

38.   Defendants created, manufactured, distributed, and sold products that are misbranded.  Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

39.   Moreover, Plaintiff and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

40.   As set forth in the chart below, the Product costs more than comparable products that do not purport to be natural.

| Product | Price | Price per packet | Premium paid per packet versus … |
|---|---|---|---|
| PureVia – 40-count box | $5.50 | $0.1375 | |
| Splenda – 50-count box | $2.99 | $0.0598 | $0.0777 |
| Sweet 'N Low – 100-count box | $2.49 | $0.0249 | $0.1126 |

14

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

41.     Plaintiff did not discover, and could not have discovered, through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

42.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

43.     Because of the self-concealing nature of Defendants' actions and affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

44.     Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of any Class purchased PureVia constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

45.     Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

46.     Defendants' conduct was and is, by its nature, self-concealing.  Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively have foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.  These affirmative acts included concealing the amount of Reb A in PureVia, that Reb A is not the same as natural crude stevia extract, and that the remaining ingredients Defendants use in PureVia are synthetic or derived from genetically modified products.

15

47.   By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

### **CLASS ACTION ALLEGATIONS**

48.   Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the Class defined as follows:

> All persons in the United States who purchased PureVia from its introduction in 2008 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendants; the officers, directors, or employees of Defendants; any entity in which a Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

49.   Plaintiff also brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within the state of California and on behalf of all persons located within the states with similar consumer protection laws, breach of express warranty laws and breach of implied warranty laws.

50.   The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

51.     There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendants' labels and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Classes to believe the Product is natural and made primarily from the stevia plant.   The members of each Class were and are similarly affected by having purchased PureVia for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendants as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes.   Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

52.     Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3).   Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased the Product, which is not natural as represented.   Plaintiff paid a premium for the Product, on the belief it was natural, over similar alternatives that did not make such representations.   Plaintiff and the members of each Class have thus all overpaid for the Product.

53.     Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of other members of each respective Class.   Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.   Plaintiff anticipates no difficulty in the management of this litigation as a class action.

54.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.   Defendants utilize an integrated, nationwide messaging

1   campaign that includes uniform misrepresentations that misled Plaintiff and the
2   other members of each Class.

3        55.    Class certification is appropriate under Rule 23(b)(3) because
4   common questions of law and fact substantially predominate over any questions
5   that may affect only individual members of each Class.  Among these common
6   questions of law and fact are:

7            a.    whether Defendants misrepresented or omitted material facts in
8        connection with the promotion, marketing, advertising, packaging, labeling,
9        and sale of PureVia;

10           b.    whether Defendants' labeling of PureVia is likely to deceive the
11       members of each Class;

12           c.    whether Defendants' conduct is unethical, oppressive,
13       unscrupulous, and/or substantially injurious to consumers;

14           d.    whether Defendants represented that PureVia has
15       characteristics, benefits, uses, or qualities that it does not have;

16           e.    whether Defendants' acts and practices in connection with the
17       promotion, marketing, advertising, packaging, labeling, distribution, and sale
18       of PureVia violated the laws alleged herein;

19           f.    whether Plaintiff and members of the Classes are entitled to
20       injunctive and other equitable relief; and

21           g.    whether Defendants were unjustly enriched by their conduct.

22       56.    Defendants engaged in a common course of conduct giving rise to the
23   legal rights sought to be enforced by the members of each respective Class.
24   Similar or identical statutory and common law violations and deceptive business
25   practices are involved.  Individual questions, if any, pale by comparison to the
26   numerous common questions that predominate.

27

28

CLASS ACTION COMPLAINT

57.     The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct.

58.     Plaintiff and the members of each Class have been damaged by Defendants' misconduct.  The members of each Class have paid for a product that they would not have purchased in the absence of Defendants' deceptive scheme, or, alternatively, would have purchased at a lesser price.

59.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Members of each Class have suffered, and will suffer, irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of their ill-gotten gains.  Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

CLASS ACTION COMPLAINT

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**

**(Unjust Enrichment on Behalf of the Classes, or in the Alternative, on Behalf of the California Class)**

60.　Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

61.　Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class, under California law.　Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.　In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.　At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.　The focus of the inquiry is the same in each state.　Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

62.　In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

63.　At all times relevant hereto, Defendants deceptively labeled, marketed, advertised, and sold PureVia to Plaintiff and the Class.

64.　Plaintiff and members of the Class conferred upon Defendants non-gratuitous payments for PureVia that they would not have due to Defendants' deceptive labeling, advertising, and marketing.　Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Class were not receiving a product of the quality, nature,

1    fitness, or value that had been represented by Defendants and reasonable

2    consumers would have expected.

3         65.    Defendants have been unjustly enriched in retaining the revenues

4    derived from purchases of PureVia by Plaintiff and members of the Class, which

5    retention under these circumstances is unjust and inequitable because Defendants

6    misrepresented that PureVia is a natural sweetener primarily made from the stevia

7    plant, when in fact it is not, which caused injuries to Plaintiff and members of the

8    Class because they paid a price premium due to the mislabeling of PureVia.

9         66.    Retaining the non-gratuitous benefits conferred upon Defendants by

10   Plaintiff and members of the Class under these circumstances made Defendants'

11   retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants

12   must pay restitution to Plaintiff and members of the Class for unjust enrichment, as

13   ordered by the Court.

14                        **SECOND CLAIM FOR RELIEF**

15   **(Plaintiff, on Behalf of Herself, the California Class, and Classes in the States**
     **with Similar Laws, Alleges Breach of Express Warranty)**
16

17        67.    Plaintiff realleges each and every allegation contained above as if

18   fully set forth herein and, to the extent necessary, pleads this cause of action in the

19   alternative.

20        68.    Plaintiff brings this Count individually under the laws of the state

21   where she purchased PureVia and on behalf of:   (a) all other persons who

22   purchased PureVia in the same State; and (b) all other persons who purchased

23   PureVia in States having similar laws regarding express warranty.

24        69.    Defendants' representations, as described herein, are affirmations by

25   Defendants that PureVia is a natural sweetener primarily made of stevia.

26   Defendants' representations regarding PureVia are made to Plaintiff and the other

27   members of the Classes at the point of purchase and are part of the description of

28

                                      21

the goods.  Those promises constituted express warranties and became part of the basis of the bargain, between Defendants on the one hand, and Plaintiff and the Classes on the other.

70.    In addition, or in the alternative, Defendants made each of the above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendants' representations as a material factor in their decisions to purchase PureVia.  Plaintiff and other members of the Classes would not have purchased PureVia but for these representations and warranties.

71.    PureVia did not, in fact, meet the representations Defendants made about PureVia, as described herein.

72.    At all times relevant to this action, Defendants falsely represented that PureVia was a natural sweetener primarily made from the stevia plant, when in fact it is not natural and is not primarily made from the stevia plant.

73.    At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

   a.    Alaska St. §45.02.313;

   b.    Ariz. Rev. Stat. Ann. §47-2313;

   c.    Ark. Code Ann. §4-2-313;

   d.    Cal. Com. Code §2313;

   e.    Colo. Rev. Stat. §4-2-313;

   f.    Conn. Gen. Stat. Ann. §42a-2-313;

   g.    D.C. Code §28:2-313;

   h.    Fla. Stat. §672.313;

   i.    Haw. Rev. Stat. §490:2-313;

   j.    810 Ill. Comp. Stat. 5/2-313;

22

1    k.    Ind. Code §26-1-2-313;

2    l.    Kan. Stat. Ann. §84-2-313;

3    m.    La. Civ. Code. Ann. art. 2520;

4    n.    Maine Rev. Stat. Ann. 11 §2-313;

5    o.    Mass. Gen. Laws Ann. 106 §2-313;

6    p.    Minn. Stat. Ann. §336.2-313;

7    q.    Miss. Code Ann. §75-2-313;

8    r.    Mo. Rev. Stat. §400.2-313;

9    s.    Mont. Code Ann. §30-2-313;

10    t.    Neb. Rev. Stat. §2-313;

11    u.    Nev. Rev. Stat. §104.2313;

12    v.    N.H. Rev. Stat. Ann. §382-A:2-313;

13    w.    N.J. Stat. Ann. §12A:2-313;

14    x.    N.M. Stat. Ann. §55-2-313;

15    y.    N.Y. U.C.C. Law §2-313;

16    z.    N.C. Gen. Stat. Ann. §25-2-313;

17    aa.    Okla. Stat. Ann. tit. 12A, §2-313;

18    bb.    Or. Rev. Stat. §72.3130;

19    cc.    Pa. Stat. Ann. tit. 13, §2313;

20    dd.    R.I. Gen. Laws §6A-2-313;

21    ee.    S.C. Code Ann. §36-2-313;

22    ff.    S.D. Codified Laws. §57A-2-313;

23    gg.    Tenn. Code Ann. §47-2-313;

24    hh.    Tex. Bus. & Com. Code Ann. §2.313;

25    ii.    Utah Code Ann. §70A-2-313;

26    jj.    Vt. Stat. Ann. tit. 9A§2-313;

27    kk.    Wash. Rev. Code §62A.2-313;

28

CLASS ACTION COMPLAINT

ll.      W. Va. Code §46-2-313;

mm.    Wyo. Stat. Ann. §34.1-2-313;

74.    The above statutes do not require privity of contract in order to recover for breach of express warranty.

75.    As a proximate result of this breach of warranty by Defendants, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because:  (a) they paid a price premium due to the deceptive labeling of PureVia; and (b) PureVia did not have the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

76.    Wherefore, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

## THIRD CLAIM FOR RELIEF

**(Plaintiff, on Behalf of Herself, the California Class, and Classes in the States with Similar Laws, Alleges Breach of Implied Warranty)**

77.    Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

78.    Plaintiff brings this Count individually under the laws of the state where she purchased PureVia and on behalf of:  (a) all other persons who purchased PureVia in the same State; and (b) all other persons who purchased PureVia in States having similar laws regarding implied warranties.

79.    The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

24

1  This implied warranty of merchantability acts as a guarantee by the seller that his
2  goods are fit for the ordinary purposes for which they are to be used.

3       80.     Defendants developed, manufactured, advertised, marketed, sold,
4  and/or distributed the Product and represented that the Product was fit for a
5  particular use, specifically that the Product could be used as a natural sweetener
6  primarily made from the stevia plant.  Contrary to such representations, Defendants
7  failed to disclose that the Product is not natural and is not primarily made from the
8  stevia plant, as promised.

9       81.     At all times, the following states listed below, including the District of
10  Columbia, have codified and adopted the provisions of the Uniform Commercial
11  Code governing the implied warranty of merchantability:

12       a.     Ala. Code §7-2-314;

13       b.     Alaska Stat. §45.02.314;

14       c.     Ariz. Rev. Stat. Ann. §47-2314;

15       d.     Ark. Code Ann. §4-2-314;

16       e.     Cal. Com. Code §2314;

17       f.     Colo. Rev. Stat. §4-2-314;

18       g.     Conn. Gen. Stat. Ann. §42a-2-314;

19       h.     Del. Code Ann. tit. 6 §2-314;

20       i.     D.C. Code §28:2-314;

21       j.     Fla. Stat. §672.314;

22       k.     Ga. Code Ann. §11-2-314;

23       l.     Haw. Rev. Stat. §490:2-314;

24       m.     Idaho Code §28-2-314;

25       n.     810 Ill. Comp. Stat. Ann. 5/2-314;

26       o.     Ind. Code Ann. §26-1-2-314;

27       p.     Iowa Code Ann. §554.2314;

28

CLASS ACTION COMPLAINT

| 1 | q. | Kan. Stat. Ann. §84-2-314; |
| 2 | r. | Ky. Rev. Stat. Ann. §355.2-314; |
| 3 | s. | La. Civ. Code Ann. art. §2520; |
| 4 | t. | Me. Rev. Stat. Ann. 11 §2-314; |
| 5 | u. | Md. Code Ann. Com. Law §2-314; |
| 6 | v. | Mass. Gen. Laws Ch. 106 §2-314; |
| 7 | w. | Mich. Comp. Laws Ann. §440.2314; |
| 8 | x. | Minn. Stat. Ann. §336.2-314; |
| 9 | y. | Miss. Code Ann. §75-2-314; |
| 10 | z. | Mo. Rev. Stat. §400.2-314; |
| 11 | aa. | Mont. Code Ann. §30-2-314; |
| 12 | bb. | Nev. Rev. Stat. §104.2314; |
| 13 | cc. | N.H. Rev. Stat. Ann. §382-A:2-314; |
| 14 | dd. | N.J. Stat. Ann. §12A:2-314; |
| 15 | ee. | N.M. Stat. Ann. §55-2-314; |
| 16 | ff. | N.Y. U.C.C. Law §2-314; |
| 17 | gg. | N.C. Gen. Stat. Ann. §25-2-314; |
| 18 | hh. | N.D. Cent. Code §41-02-314; |
| 19 | ii. | Ohio Rev. Code Ann. §1302.27; |
| 20 | jj. | Okla. Stat. Ann. tit. 12A §2-314; |
| 21 | kk. | Or. Rev. Stat. §72.3140; |
| 22 | ll. | Pa. Stat. Ann. tit. 13 §2314; |
| 23 | mm. | R.I. Gen. Laws §6A-2-314; |
| 24 | nn. | S.C. Code Ann. §36-2-314; |
| 25 | oo. | S.D. Codified Laws §57A-2-314; |
| 26 | pp. | Tenn. Code Ann. §47-2-314; |
| 27 | qq. | Tex. Bus. & Com. Code Ann. §2-314; |
| 28 | | |

26

1      rr.    Utah Code Ann. §70A-2-314;

2      ss.    Va. Code Ann. §8.2-314;

3      tt.    Vt. Stat. Ann. tit. 9A §2-314;

4      uu.    W. Va. Code §46-2-314;

5      vv.    Wash. Rev. Code §62A 2-314;

6      ww.    Wis. Stat. Ann. §402.314; and

7      xx.    Wyo. Stat. Ann. §34.1-2-314.

8      82.    As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of sweetening products, each Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

12      83.    Further, Defendants are merchants with respect to the Product. Defendants developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Product and represented to Plaintiff and the Classes that they developed the Product as a natural sweetener primarily made from the stevia plant as described herein.  Further, Defendants, by selling the Product to Plaintiff and the Classes have held themselves out as retailers of the Product that could be used as a natural sweetener primarily made from the stevia plant and, in fact, have derived a substantial amount of revenues from the sale of the Product.

20      84.    The Product can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

22      85.    As merchants of the Product, Defendants knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a natural sweetener primarily made from the stevia plant, as promised.

26      86.    Defendants developed, manufactured, produced, sold, and distributed the Product to consumers such as Plaintiff and the Classes.  They knew that the

CLASS ACTION COMPLAINT

Product would be used as a natural sweetener primarily made from the stevia plant, as promised.

87. Defendants specifically represented in the labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

88. At the time that Defendants developed, manufactured, sold, and/or distributed the Product, Defendants knew the purpose for which the Product was intended and impliedly warranted that the Product was of merchantable quality and was fit for its ordinary purpose – a natural sweetener primarily made from the stevia plant.

89. Defendants breached their implied warranties in connection with the sale of the Product to Plaintiff and members of the Classes. The Product was not fit for its ordinary purposes and intended use as a natural sweetener primarily made of stevia, because the Product is not natural and is predominantly made of synthetic and/or genetically modified ingredients.

90. Defendants had actual knowledge that the Product was not natural and was not primarily made from the stevia plant as promised and thus was not fit for its ordinary purpose and Plaintiff therefore was not required to notify Defendants of the breach. If notice is required, Plaintiff and the Classes adequately have provided Defendants of such notice through the filing of this lawsuit.

91. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and other members of the Classes have been injured. Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' representations and warranties. Defendants misrepresented the character of the Product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as

CLASS ACTION COMPLAINT

promised and therefore had no value to Plaintiff and the other members of the Classes.

## FOURTH CLAIM FOR RELIEF

**(Plaintiff, on Behalf of Herself and Classes in the States with Similar Laws, Alleges Violation of the Consumer Fraud Laws of the Various States)**

92.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

93.     Plaintiff brings this Count individually under the laws of the state where she purchased PureVia and on behalf of all other persons who purchased PureVia in States having similar laws regarding consumer fraud and deceptive trade practices.

94.     Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the State in which they purchased the Product.

95.     The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

96.     Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

    b.    Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

    c.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

CLASS ACTION COMPLAINT

d.     California Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

e.     Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

f.     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.     Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.     District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.     Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.     California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.     Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.     Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.     Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.     Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.     Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

CLASS ACTION COMPLAINT

r.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.    Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.    Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.    Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.    Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.    New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.    North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.    Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

31

ff.     Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.     South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.     Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.     Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.     Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.     West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

97.     The Product constitutes a product to which these consumer protection laws apply.

98.     In the conduct of trade or commerce regarding the production, marketing, and sale of the Product, Defendants engaged in one or more unfair or deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of the packaging and labeling of the Product that it is a natural sweetener primarily made from the stevia plant, as described herein.

99.     Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

CLASS ACTION COMPLAINT

100.   Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

101.   Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

102.   Plaintiff and the other members of the Classes did so rely.

103.   Plaintiff and the other members of the Classes purchased the Product produced by Defendants which misrepresented the characteristics and nature of the Product.

104.   Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' deceptive and unlawful acts.

105.   As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

106.   Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## FIFTH CLAIM FOR RELIEF

**(Plaintiff, on Behalf of Herself and the California Class, Alleges Violations of California Business & Professions Code §17200 *et seq*. Based on Fraudulent Acts and Practices)**

107.   Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

108.   Plaintiff brings this claim individually and on behalf of members of the California Class under California law.

109.   Under Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

110.   Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresenting that the Product is natural and primarily made from the stevia plant.

111.   After reviewing the packaging for the Product, Plaintiff purchased the Product in reliance on Defendants' representations that the Product is a natural sweetener primarily made from the stevia plant.  Plaintiff would not have purchased the Product at all, or would not have paid such a high price for the Product, but for Defendants' false promotion of the Product as a natural sweetener primarily made from the stevia plant.  Plaintiff and the California Class have all paid money for PureVia.  However, Plaintiff and the California Class did not obtain the full value of the advertised product due to Defendants' misrepresentations regarding PureVia.  Accordingly, Plaintiff and the California Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

112.   By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

113.   In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

114.   As a result of Defendants' conduct, Plaintiff seek injunctive and restitutionary relief under California Business & Professions Code §17203.

CLASS ACTION COMPLAINT

# SIXTH CLAIM FOR RELIEF

**(Plaintiff, on Behalf of Herself and the California Class, Alleges Violations of California Business & Professions Code §17200, *et seq*., Based on Commission of Unlawful Acts)**

115.   Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

116.   Plaintiff brings this claim individually and on behalf of members of the California Class under California law.

117.   The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.

118.   Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200 *et seq*., California Health & Safety Code §110660, 21 U.S.C. §321, California Business and Professions Code §17500 and by violating the common law.

119.   By violating these laws, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

120.   Plaintiff purchased the Product in reliance on Defendants' representations that the Product is a natural sweetener primarily made from the stevia plant.  Plaintiff would not have purchased the Product at all, purchased a less expensive product, or would not have paid such a high price for the Product, but for Defendants' false promotion that the Product is a natural sweetener primarily made from the stevia plant.  Plaintiff and the California Class have all paid money

CLASS ACTION COMPLAINT

for PureVia. However, Plaintiff and the California Class did not obtain the full value of the advertised product due to Defendants' misrepresentations regarding PureVia. Accordingly, Plaintiff and the California Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

121. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

122. As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

**SEVENTH CLAIM FOR RELIEF**

**(Plaintiff, on Behalf of Herself and the California Class, Alleges Violations of California Business & Professions Code §17200, *et seq*., Based on Unfair Acts and Practices)**

123. Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

124. Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

125. Defendants have engaged, and continue to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. This conduct includes representing that the Product is natural and minimally processed when, in fact, it is not.

CLASS ACTION COMPLAINT

1    126.  Defendants have engaged, and continue to engage, in conduct that
2  violates the legislatively declared policies of: (1) California Civil Code §§1572,
3  1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil
4  Code §1770 against committing acts and practices intended to deceive consumers
5  regarding the representation of goods in certain particulars; (3) California Health &
6  Safety Code §110660 and 21 U.S.C. §321 against misbranding food; and (4)
7  California Business & Professions Code §17500 against false advertising.
8  Defendants gain an unfair advantage over their competitors, whose labeling,
9  advertising and marketing for other similar products must comply with these laws.

10    127.  Defendants' conduct, including misrepresenting the benefits of the
11  Product, is substantially injurious to consumers.  Such conduct has caused, and
12  continues to cause, substantial injury to consumers because consumers would not
13  have purchased the Product at all, or would not have paid such a high price for the
14  Product, but for Defendants' false promotion of the Product as a natural sweetener
15  primarily made from the stevia plant.  Consumers have thus overpaid for the
16  Product.  Such injury is not outweighed by any countervailing benefits to
17  consumers or competition.  Indeed, no benefit to consumers or competition results
18  from Defendants' conduct.  Since consumers reasonably rely on Defendants'
19  representations of the Product and injury results from ordinary use of the Product,
20  consumers could not have reasonably avoided such injury.  *Davis v. Ford Motor*
21  *Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando*
22  *Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based
23  on the definition of "unfair" in Section 5 of the FTC Act).

24    128.  By committing the acts alleged above, Defendants have engaged in
25  unfair business acts and practices which constitute unfair competition within the
26  meaning of Business & Professions Code §17200.

27

28

CLASS ACTION COMPLAINT

129. Plaintiff purchased the Product in reliance on Defendants' representations that the Product is a natural sweetener primarily made from the stevia plant. Plaintiff would not have purchased the Product at all, purchased a less expensive product, or would not have paid such a high price for the Product, but for Defendants' false promotion that the Product is a natural sweetener primarily made from the stevia plant. Plaintiff and the California Class have all paid money for PureVia. However, Plaintiff and the California Class did not obtain the full value of the advertised product due to Defendants' misrepresentations regarding the nature of said products. Accordingly, Plaintiff and the California Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

130. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through their fraudulent conduct and further seeks an order requiring Defendants to conduct a corrective advertising campaign.

131. As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

**EIGHTH CLAIM FOR RELIEF**

**(Plaintiff, on Behalf of Herself and the California Class, Alleges Violations of the CLRA – Injunctive Relief)**

132. Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

133. Plaintiff brings this claim individually and on behalf of members of the California Class under California law.

134. Plaintiff purchased PureVia for her own personal use.

38

135.   The acts and practices of Defendants as described above were intended to deceive Plaintiff and members of the Class as described herein, and have resulted, and will result in damages to Plaintiff and member of the California Class.   These actions violated and continue to violate the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

a.   In violation of §1770(a)(5) of the CLRA, Defendants' acts and practices constitute representations that the Product has characteristics, uses, and/or benefits, which it does not;

b.   in violation of §1770(a)(7) of the CLRA, Defendants' acts and practices constitute representations that the Product is of a particular quality, which it is not; and

c.   in violation of §1770(a)(9) of the CLRA, Defendants' acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

136.   By committing the acts alleged above, Defendants have violated the CLRA.

137.   Plaintiff and California Class members suffered injuries caused by Defendants' misrepresentations because: (a) they were induced to purchase a product they would not have otherwise purchased if they had known that PureVia was not primarily stevia-based and was not a natural sweetener; and/or (b) they paid a price premium due to the false and misleading labeling, advertising and marketing of PureVia.

138.   In compliance with the provisions of California Civil Code §1782, Plaintiff sent written notice to Defendants on January 27, 2014 informing Defendants of her intention to seek damages under California Civil Code §1750, *et seq.*, unless Defendants offer appropriate consideration or other remedy to all affected consumers.   Plaintiff intends to amend this Complaint to seek damages

pursuant to California Civil Code §1781(a) should Defendants fail to adequately and fully compensate Plaintiff and the California Class.

139.   Plaintiff and the California Class members are entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of Defendants, the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

## NINTH CLAIM FOR RELIEF

**(Plaintiff, on Behalf of Herself and the California Class, Alleges Violations of California Business & Professions Code §17500, *et seq*., Based on False Advertising)**

140.   Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

141.   Plaintiff brings this claim individually and on behalf of members of the California Class under California law.

142.   Class members have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth above.

143.   Defendants engaged in advertising and marketing to the public and offered for sale PureVia on a nationwide basis, including in California.

144.   From approximately 2008 to the present, Defendants engaged in a false advertising campaign falsely touting PureVia as a natural sweetener predominantly made from the stevia plant, when in fact, it is not.  Defendants conveyed the false and misleading claims to Plaintiff and other consumers through the labeling for the Product as well as the marketing and advertising for the Product.

145.   Defendants engaged in the marketing and advertising alleged herein with intent to directly or indirectly induce the sale of the Product to consumers such as Plaintiff and the California Class.

146.   Defendants' advertisements and marketing representations regarding the characteristics of the Product were false, misleading, and deceptive as set forth above.

147.   At the time Defendants disseminated the statements alleged herein, Defendants knew, or should have known, that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §17500, *et seq.*

148.   Plaintiff seeks restitution, injunctive relief, a corrective advertising campaign and all other relief allowable under California Business & Professions Code §17500, *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

A.   That the Court certify the nationwide Class and the California Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Classes;

B.   That the Court declare that Defendants' conduct violates the statutes referenced herein;

C.   That the Court preliminarily and permanently enjoin Defendants from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

CLASS ACTION COMPLAINT

1    D.    That the Court order Defendants to conduct a corrective advertising

2 and information campaign advising consumers that the Product does not have the

3 characteristics, uses, benefits, and quality Defendants have claimed;

4    E.    That the Court order Defendants to implement whatever measures are

5 necessary to remedy the unlawful, unfair, or fraudulent business acts or practices,

6 untrue and misleading advertising, and other violations of law described in this

7 Complaint;

8    F.    That the Court order Defendants to notify each and every individual

9 and/or business who purchased the Product of the pendency of the claims in this

10 action in order to give such individuals and businesses an opportunity to obtain

11 restitution from Defendants;

12    G.    That the Court order Defendants to pay restitution to restore to all

13 affected persons all funds acquired by means of any act or practice declared by this

14 Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or

15 misleading labeling, advertising, and marketing, plus pre- and post-judgment

16 interest thereon;

17    H.    That the Court order Defendants to disgorge all monies wrongfully

18 obtained and all revenues and profits derived by Defendants as a result of their acts

19 or practices as alleged in this Complaint;

20    I.    That the Court award damages to Plaintiff and the Classes;

21    J.    That the Court enter an Order awarding costs, expenses, and

22 reasonable attorneys' fees; and

23    K.    That the Court grant such other and further relief as may be just and

24 proper.

25

26

27

28

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2
    Plaintiff demands a trial by jury on all causes of action so triable.

3

4  DATED:  January 28, 2014           SCOTT+SCOTT,

5                                   ATTORNEYS AT LAW, LLP

6

7                                   Christopher M. Burke (214799)

8                                   cburke@scott-scott.com

                                 Hal D. Cunningham (243048)

9                                   hcunningham@scott-scott.com

10                                  4771 Cromwell Avenue

                                 Los Angeles, CA 90027

11                                  Telephone: 213-985-1274

12                                  Facsimile: 213-985-1278

13                                  Joseph P. Guglielmo

                                 SCOTT+SCOTT,

14                                  ATTORNEYS AT LAW, LLP

15                                  The Chrysler Building

                                 405 Lexington Avenue

16                                  40th Floor

17                                  New York, NY 10174

                                 Telephone: (212) 223-6444

18                                  Facsimile: (212) 223-6334

19                                  jguglielmo@scott-scott.com

20                                  E. Kirk Wood

21                                  WOOD LAW FIRM, LLC

                                 P. O. Box 382434

22                                  Birmingham, Alabama 35238-2434

23                                  Telephone:  (205) 908-4906

                                 Facsimile:  (866) 747-3905

24                                  ekirkwood1@bellsouth.net

25

26

27

28

43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Greg L. Davis
DAVIS & TALIAFERRO
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001
gldavis@knology.net

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ R. Gary Klausner _____ and the assigned Magistrate Judge is _____ Alicia G. Rosenberg _____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-00670-RGK(AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ January 28, 2014 _____
Date

By   APEDRO _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| ANGEL AGUIAR, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| *Plaintiff(s)* ) | Civil Action No. |
| v. ) | CV14-00670 -RGK(AGRx) |
| MERISANT COMPANY, and WHOLE EARTH SWEETENER CO., LLC, ) ) ) ) ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
4771 Cromwell Avenue
Los Angeles, CA  90027

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  JAN 2 8 2014

ANDRES PEDRO

*Signature of Clerk or Deputy Clerk*

1202

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

ANGEL AGUIAR

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

MERISANT COMPANY, WHOLE EARTH SWEETENER CO., LLC

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Hal D. Cunningham, Scott+Scott, Attorneys at Law, LLP, 4771 Cromwell Avenue, Los Angeles, CA 90027, 213/ 985-1274

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1391(a) Unfair and deceptive marketing and advertising of PureVia.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/ Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV14-00670

CV-71 (11/13) | CIVIL COVER SHEET | Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
|  | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. |  |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
|  | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims?  (Make only one selection per row) | A.  Los Angeles County | B.  Ventura, Santa Barbara, or San Luis Obispo Counties | C.  Orange County | D.  Riverside or San Bernardino Counties | E.  Outside the Central District of California | F.  Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1.** Is either of the following true?  If so, check the one that applies:

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right.  ➡

**C.2.** Is either of the following true?  If so, check the one that applies:

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | Western |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 1/28/2014

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |