# EXHIBIT 5



▶ Home ▶ Inspections, Compliance, Enforcement, and Criminal Investigations ▶ Enforcement Actions ▶ Warning Letters

**Enforcement Actions**

**Warning Letters**

2007

## Hain Celestial Group, Inc. 17-Aug-07



Public Health Service
Food and Drug
Administration

College Park, Maryland

AUG 17 2007

**WARNING LETTER**

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**CFSAN-OC-07-02**

Erwin Simon, President and CEO
The Hain Celes ial Group, Inc,
4600 Sleepytime Drive
Boulder, Colorado 80301-3292

Dear Mr. Simon:

The Food and Drug Administration (FDA) has reviewed the regulatory status of the ingredients declared on the label of your Celestial Seasonings® Zingers to GO&#8482; Tangerine Orange Wave Herb Tea (hereinafter "Zingers Tangerine Orange Tea"). Zingers Tangerine Orange Tea is adulterated under section 402(a)(2)(C) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. 342(a)(2)(C)] because it bears or contains stevia, which is an unsafe food additive. The regulations pertaining to food additives are located in Title 21, **Code of Federal Regulations** (21 CFR), Part 170. You can find copies of the Act and these regulations through links in FDA's home page at http://www.fda.gov.

Notwithstanding your use of the term "Herbal Supplement" to identify the product and your use of a supplement facts label for nutrition labeling, your Zingers Tangerine Orange Tea is subject to regulation as a conventional food and not a dietary supplement. Section 201(ff) of the Act [21 U.S.C. 321(ff)] defines the term "dietary supplement." As defined by the Act, a dietary supplement does not include a product represented for use as a conventional food or as a sole item of a meal or the diet [21 U.S.C. 321(ff)(2)(B)]. Zingers Tangerine Orange Tea is represented as a conventional food wi hin he meaning of sec ion 201(f) of the Act [21 U.S.C. 321(f)]. Examples of label statements hat establish that your powdered drink mix product is represented as a conventional food, and accordingly is not a dietary supplement, include the following:

- The label declares "Iced Tea Mix" adjacent to the words "Herbal Supplement" on the Principal Display Panel (PDP).
- The label states that "Zingers To Go are an easy and delicious all-natural way to get your daily eight glasses of water."
- The label states that he product is "a sunny combination of the flavor of tangy tangerines and juicy oranges with refreshing, naturally caffeine free herb tea."

Any substance intentionally added to a conventional food, such as a powdered drink mix product, must be used in accordance with a food additive regulation approving the substance for that use, unless the substance is generally recognized as safe (GRAS) among experts qualified by scientific training and experience to evaluate its safety ("qualified experts") under the conditions of its intended use, or is otherwise exempt from the food additive definition in section 201(s) of the Act [21 U.S.C. 321(s)].

FDA's regulations in 21 CFR Part 170 describe criteria for eligibility for classification of a food ingredient as GRAS. Under 21 CFR 170.30(a), general recognition of safety must be based only on the views of qualified experts. The basis of such views may be either (1) scien ific procedures or (2) in the case of a substance used in food prior to January 1, 1958, through experience based on common use in food. General recognition of safety requires common knowledge about the substance throughout the scientific community knowledgeable about he safety of substances directly or indirectly added to food.

FDA's regulations in 21 CFR Part 170 define "common use in food" and establish criteria for eligibility for classification as GRAS through experience based on common use in food. Under 21 CFR 170.3(f), "[c]ommon use in food means a substantial history of consumption of a substance for food use by a significant number of consumers." Under 21 CFR 170.30(c)(1), "[g]eneral recognition of safety hrough common use in food prior to January 1, 1958, shall be based solely on food use of the substance prior to January 1, 1958, and shall

EXHIBIT 5
012

ordinarily be based upon generally available data and information." Importantly, however, the fact that a substance was added to food before 1958 does not, in itself, demonstrate that such use is safe, unless the pre-1958 use is sufficient to demonstrate to qualified experts that the substance is safe when added to food.

Similarly, FDA's regulations in 21 CFR Part 170 define "scientific procedures" and establish criteria for eligibility for classification as GRAS through scientific procedures Under 21 CFR 170 3(h), "[s]cientific procedures include those human, animal, analytical, and other scientific studies, whether published or unpublished, appropriate to establish the safety of a substance." Under 21 CFR 170.30(b) based upon scientific procedures shall require the same quantity and quality of scientific evidence as is required to obtain approval of a food additive regulation for the ingredient." Section 170.30(b) further states that general recognition of safety through scientific procedures is ordinarily based upon published studies, which may be corroborated by unpublished studies and other data and information.

FDA's regulations in 21 CFR Part 170 define "safe" and "safety." Under 21 CFR 170.3(i), "[s]afe or safety means that there is a reasonable certainty in the minds of competent scientists that the substance is not harmful under he intended conditions of use." The regulation provides that, in determining safety, the following factors are to be considered: (1) The probable consumption of the substance and of any substance formed in or on food because of its use; (2) the cumulative effect of the substance in the diet, taking into account any chemically or pharmacologically related substance or substances in such diet; and (3) safety factors which, in the opinion of qualified experts, are generally recognized as appropriate. Such safety factors ordinarily are established through extensive testing in animals to determine whether consumption of the ingredient produces adverse effects when consumed chronically (i.e., on a daily basis over the course of a lifetime (Ref. 1)).

While FDA has received inquiries and petitions for the use of stevia or stevia extracts in food, data and information necessary to support the safe use have been lacking. In fact, literature reports have raised safety concerns about the use of stevia, including concerns about control of blood sugar, and effects on the reproductive, cardiovascular and renal systems.

In light of these safety concerns, the use of stevia in your Zingers Tangerine Orange Tea product does not satisfy the criteria for GRAS status outlined above. Further, FDA is not aware of any other exemption from the food addi ive definition that would apply to stevia for use as an ingredient in powdered drink mix products. Therefore, stevia used in this manner is a food additive under section 201(s) of the Act and is subject to the provisions of section 409 of the Act [21 U.S.C. 348]. Under section 409, a food additive is required to be approved by FDA for its intended use prior to marketing. Stevia (Stevia rebaudiuna) is not an approved food additive for use in powdered drink mix products. Therefore, your stevia-containing Zingers Tangerine Orange Tea is adulterated within the meaning of section 402(a)(2)(C) of the Act.

This letter is not intended to be an all-inclusive review of all labeling and products your firm markets. While reviewing your website at http://www.celestialseasonings.com/products/zingers-to-go/, we noticed that there are various flavors of your Celestial Seasoningso Zingers to GO&#8482; powdered drink mix products that are labeled as containing stevia. It is your responsibility to ensure that all of your products are in compliance with the Act and its implementing regulations.

Failure to promptly correct the violation specified above may result in enforcement action without further notice. Enforcement action may include seizure of viola ive products and/or injunction against the manufacturers and distributors of violative products.

Please advise this office in writing within fifteen (15) days from your receipt of this letter as to he specific steps you have taken to correct the violations noted above and to assure that similar violations do not occur. Your response should include any documentation necessary to show that correction has been achieved. If you cannot complete all corrections before you respond, please explain the reason for your delay and he date by which each such item will be corrected and documented.

Please send your reply to Attention: Lynn Szybist, Compliance Officer, Food and Drug Administration, Center for Food Safety and Applied Nutrition, Office of Compliance, Division of Enforcement, 5100 Paint Branch Parkway (HFS-608), College Park, Maryland 20740. If you have any questions regarding any issue in this letter, please contact Ms. Szybist at (301) 436-2040.

Sincerely,

/S/

Joseph R. Baca
Director
Office of Compliance
Center for Food Safety
and Applied Nutrition

cc: Food and Drug Administration
Denver District Office
Attn: Belinda Collins, District Director
(HFR-SW200)
6th Avenue & Kipling Street
Building 20
Denver, Colorado 80225

1. Toxicological Tes ing of Food Additives, available at http://vm.cfsan.fda.gov/~dms/opa-tgl

## Warning Letter Response

- Hain Celestial Group Response Letter

EXHIBIT 5
013

Page Last Updated: 12/08/2009

Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

**FDA**

Accessibility | Contact FDA | Careers | FDA Basics | FOIA | No Fear Act | Site Map | Transparency | Website Policies

**U.S. Food and Drug Administration**
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

USA.gov

For Government | For Press

Combination Products
Advisory Committees
Science & Research
Regulatory Information
Safety
Emergency Preparedness
International Programs
News & Events
Training and Continuing Education
Inspections/Compliance
State & Local Officials
Consumers
Industry
Health Professionals
FDA Archive

U.S. Department of **Health & Human Services**

EXHIBIT 5
014