# EXHIBIT 11

**NACHO STYLE, NACHO FLAVOR, AND SIMILAR TERMS:**

Acceptable terminology for products possessing the commonly expected flavor characteristics associated with "Nachos," a Mexican hors d'oeurve. The characterizing flavor components generally include, but are not limited to, cheese (Cheddar or Monterey Jack), tomato (tomato solids, tomato powder), spices, or other natural seasonings and flavorings (usually garlic and onion), and chili peppers (mild or hot). Romano and Parmesan cheese are also often present. However, these cheeses may not be used to satisfy the above cheese requirement.

**NATURAL CLAIMS:**

The term "natural" may be used on labeling for meat products and poultry products, provided the applicant for such labeling demonstrates that:

(1) the product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than minimally processed. Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.

Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing. Thus, the use of a natural flavor or flavoring in compliance with 21 CFR 101.22 which has undergone more than minimal processing would place a product in which it is used outside the scope of these guidelines. However, the presence of an ingredient which has been more than minimally processed would not necessarily preclude the product from being promoted as natural. Exceptions of this type may be granted on a case-by-case basis if it can be demonstrated that the use of such an ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product. In such cases, the natural claim must be qualified to clearly and conspicuously identify the ingredient, e.g., .all natural or all natural ingredients except dextrose, modified food starch, etc."

All products claiming to be natural or a natural food should be accompanied by a brief statement which explains what is meant by the term natural, i.e., that the product is a natural food because it contains no artificial ingredients and is only minimally processed. This statement should appear directly beneath or beside all natural claims or, if elsewhere on the principal display panel; an asterisk should be used to tie the explanation to the claim.

The decision to approve or deny the use of a natural claim may be affected by the specific context in which the claim is made. For example, claims indicating that a product is

EXHIBIT 11
075

natural food, e.g., "Natural chili" or "chili - a natural product" would be unacceptable for a product containing beet powder which artificially colors the finished product. However, "all natural ingredients" might be an acceptable claim for such a product.

**Correction**:   In the August 2005 edition of the Policy Book, a "Note" was added to the entry on "natural claims" indicating that "Sugar, sodium lactate (from a corn source), and natural flavorings from oleoresins or extractives are acceptable for "all natural" claims. The Note was followed by other new text that stated "This entry cancels Policy Memo 055 dated November 22, 1982.   See: 7 CFR NOP Final Report, Part 205.601 through 205.606 for acceptable ingredients allowed for all natural claims."   This "Note" is now revised to read as follows:

Note:  Sugar and natural flavorings from oleoresins or extractives are acceptable for "all natural" claims.   The other text, including the reference to "sodium lactate (from a corn source)" has been removed from the guidance on "natural claims" for the reasons explained below.

The note regarding sodium lactate (from a corn source) was added to the "natural" entry in recognition that manufacturers could show that the ingredient was from a natural source (i.e., from corn), was no more than minimally processed, and provided a flavoring effect, not an antimicrobial effect, at levels consistent with those regulated for the purpose of flavoring (i.e., less than 2 percent of a formulation).  Thus, the Agency considered such uses to be consistent with the meaning of "natural."   However, recent information provided to FSIS raises questions about this judgment.  This information indicates that sodium lactate, potassium lactate, and calcium lactate provide an antimicrobial effect at levels that have been regulated as providing a flavoring effect. Therefore, regardless of whether it can be shown that any form of lactate is from a natural source and is not more than minimally processed, the use of lactate (sodium, potassium, and calcium) may conflict with the meaning of "natural" because it may be having a preservative effect at levels of use associated with flavoring.   Thus, listing "sodium lactate (from a corn source)" in the previous entry may have been in error, at least without qualifying the listing by stating that the use of this ingredient or any ingredient known to have multiple technical effects needs to be judged on a case-by-case basis at the time of label approval to assess that the intended use, level of use, and technical function are consistent with the 1982 policy.   Whether there should ever be a blanket acceptance of any ingredient that has multiple functions, including an antimicrobial or preservative function, in products labeled "natural" is a complicated issue that is best addressed through notice and comment rulemaking.  Therefore, FSIS has removed the reference to sodium lactate from this guidance but will judge claims that foods to which a lactate has been added can be characterized as "natural" on a case-by-case basis, pending the outcome of a rulemaking on the use of "natural" that the Agency intends to initiate in the near future.

This correction also removes the statement in the entry on "Natural Claims," "See:  7 CFR NOP Final Report, Part 205.601 through 205.606 for acceptable ingredients allowed for all natural claims."  This statement was intended to help manufacturers locate a source to support the claims that ingredients they use in "natural" products are not more

EXHIBIT 11
076

than minimally processed, are not artificial or synthetic, and do not act to preserve products.  The Agency has removed this text because it was confusing users of the policy guidance who thought that any ingredient that is "organic" could be used in a "natural" product, which is not the case.

## NATURAL SMOKED COLOR:

Approval can be properly granted to labels with this statement when the products involved are "Smoked" and not artificially colored.  The results of the use of artificial smoke materials can, by means of a number of processing operations, result in a color characteristic being acquired by the frankfurters, bologna, and the like.  The term "Natural Smoked Color" can be used to properly identify this point.

## NAVARIN:

Navarin is a stew containing lamb or mutton and vegetables and considered a national dish of France.  It must meet the meat stew standard of 25 percent meat.  Show true product name, e.g., "Navarin-Lamb Stew."

## NEGATIVE LABELING:

(1)     Negative labeling is allowed if it is unclear from the product name that the ingredient is not present.   For example, the use of the term "no beef" on the label of "turkey pastrami" would further clarify that the product does not contain beef.

(2)     Negative labeling is allowed if the statement is beneficial for health, religious preference, or other similar reasons.  For example, highlighting the absence of salt in a product would be helpful to those persons on sodium-restricted diets.

(3)     Negative labeling is allowed if the claims are directly linked to the product packaging, as opposed to the product itself.  For example, flexible retortable pouches could bear the statement "no preservatives, refrigeration or freezing needed with this new packaging method."

(4)     Negative labeling is allowed if such claims call attention to the absence of ingredients because they are prohibited in a product by regulation or policy.  The statement must clearly and prominently indicate this fact, so as not to mislead or create false impressions.  For example, "USDA regulations prohibit the use of preservatives in this product" would be an acceptable statement for ground beef.

(5)     Negative labeling is allowed to indicate that absence of an ingredient when that ingredient is expected or permitted by regulation or policy.  This could also apply to ingredients which are not expected or permitted by regulation or policy if the ingredients could find their way into the product through a component.  For example, the use of "no preservatives" on the label of "spaghetti with meat and sauce" (where regulations do not permit the direct addition of preservatives)

EXHIBIT 11
077