SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
CHRISTOPHER M. BURKE (214799)
cburke@scott-scott.com
HAL CUNNINGHAM (243048)
hcunningham@scott-scott.com
4771 Cromwell Avenue
Los Angeles, CA  90027
Telephone:  213/985-1274
213/985-1278 (fax)

*Counsel for Plaintiff*

[Additional Counsel on Signature Page.]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGEL AGUIAR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERISANT COMPANY, and WHOLE EARTH SWEETENER COMPANY, LLC,<br><br>Defendants. | Civil No.: 2:14-cv-00670-RGK-AGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: March 24, 2014<br>Time: 9:00 a.m.<br>Courtroom: 850<br>Hon. R. Gary Klausner |

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................1

II.   STATEMENT OF FACTS....................................................................................4

III.  STANDARD OF REVIEW ...................................................................................7

IV.   ARGUMENT .........................................................................................................8

      A.    Plaintiff Plausibly Alleges Defendants' Statements are Likely to, and Have in Fact, Deceived Reasonable Consumers ......................8

            1.    Whether Reasonable Consumers are Misled by the Products is a Question of Fact for a Jury....................................8

            2.    Plaintiff's Complaint Provides a Clear and Consistent Understanding of the Word Natural .........................................11

      B.    The Doctrine of Primary Jurisdiction Is Inapplicable.........................18

      C.    Plaintiff Adequately Pleads Breach of Express Warranty..................21

      D.    Plaintiff Adequately Pleads Unjust Enrichment .................................23

V.    CONCLUSION ....................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aaronson v. Vital Pharm., Inc.*,
   09-CV-1333 W (CAB), 2010 WL 625337 (S.D. Cal. Feb 17, 2010) ................21

*Ackerman v. Coca-Cola Co.*,
   No. 09-CV-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .......................21

*Allen v. ConAgra Foods, Inc.*,
   13-CV-01279-JST, 2013 WL 4737421 (N.D. Cal. Sept. 3, 2013)....................22

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................7, 8

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796 (N.D. Cal. May
   26, 2011) ...............................................................................................11, 23

*Balser v. Hain Celestial Group, Inc.*,
   CV 13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ......................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................7, 8

*Brazil v. Dole Food Company*,
   No. 12-cv-1831-LHK, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) ..............10

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ............................................................22

*Bruton v. Gerber Products Co.*,
   12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ....................14

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008)........................................................................19

*Colucci v. ZonePerfect Nutrition Co.*,
   No. 12–2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ...........................10

ii

*Day v. AT & T Corp.*,
  63 Cal. App. 4th 325, 74 Cal. Rptr.2d 55 (1998) ................................................... 9

*Fagan v. Neutrogena Corp.*,
  5:13-CV-01316-SVW-OP, 2014 WL 92255 (C.D. Cal. Jan 8, 2014) ............... 19

*Gitson v. Clover Stornetta Farms*,
  C-13-01517 EDL, 2014 WL 172338 (N.D. Cal. Jan. 15, 2014) ........................ 10

*Hitt v. Ariz. Beverage Co.*, LLC,
  No. 08cv8092009, WL 449190 (S.D. Cal. Feb.4, 2009) ................................... 11

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................................ 11

*In re ConAgra Foods, Inc.*,
  CV 11-05379-MMM, 2013 WL 4259467 (C.D. Cal. Aug. 12, 2013) ............... 19

*In re Ferrero Litig.*,
  794 F. Supp. 2d (S.D. Cal. 2011) ..................................................................... 23

*In re Simply Orange Juice Mktg. & Sales Practices Litig.*,
  MDL No. 2361, 2013 WL 781785 (W.D. Mo. Mar. 1, 2013) .......................... 14

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) .................................................................................... 22

*Ivie v. Kraft Foods Global, Inc.*,
  C-12-02554-RMW, 2013 WL 3296616 (N.D. Cal. June 28, 2013) .................. 19

*Janney v. Gen. Mills*,
  12-CV-03919-WHO, 2013 WL 5587945 (N.D. Oct 10, Cal. 2013) ................. 19

*Jou v. Kimberly-Clark Corp.*,
  C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .......... 10, 15, 16

*Keith v. Buchanan,*
  173 Cal. App. 3d 13, 220 Cal. Rptr. 392, 396 (Ct. App. 1985) ........................ 21

*Kosta v. Del Monte Corp.*,
  No. 12-cv-1722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) .............. 10

iii

PLAINTIFF'S OPPOSITION TO                                Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ................................................................................ 9

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 102 (N.D. Cal. 2009) .................................................... 3, 20, 21

*Lynch v. Tropicana Products, Inc.*,
  2:11-CV-07382, 2013 WL 2645050 (D.N.J. June 12, 2013) ...................... 13, 14

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998) ................................................................................. 10

*Manchouck v. Mondelez Int'l Inc.*,
  No. C 13-02148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...................... 16

*McKinnis v. Kellogg USA*,
  CV-07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ........................... 17

*McKinniss v. Sunny Delight Beverages Co.*,
  CV-07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ........................... 17

*Merisant Company v. McNeil Nutritionals LLC*,
  04-cv-05504 (E.D. Pa.) ..................................................................................... 13

*Oki Am., Inc. v. Microtech Intern., Inc.*,
  872 F.2d 312 (9th Cir. 1989) ............................................................................ 24

*Oracle Corp. v. SAP AG*,
  C 07-1658 PJH, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ....................... 24

*Parker v. J.M. Smucker Co.*,
  C 13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ......................... 22

*Pelayo v. Nestle USA, Inc.*,
  No. CV 13-5213-JFW, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ............. 15

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...................... 16

*Rooney v. Cumberland Packing Corp.*,
  No. 12-CV-0033-H (DHB), 2012 WL 1512106 (S.D. Cal. 2012) .................... 16

iv

PLAINTIFF'S OPPOSITION TO                          Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

*Shaker v. Nat. 's Path Foods, Inc.*,
   No. EDCV 13-1138-GW (OPx), 2013 WL 6729802, at *4 (C.D. Cal.
   Dec. 16, 2013) ........................................................................................ 16

*Sugawara v. Pepsico, Inc.*,
   2:08-CV-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ........................ 17

*U.S. v. Culliton*,
   328 F.3d 1074 (9th Cir. 2003) ...................................................................... 20

*United States v. Western Pac. R.R. Co.*,
   352 U.S. 59 (1956) ...................................................................................... 20

*Vicuña v. Alexia Foods, Inc.*,
   No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)............ 10, 23

*Videtto v. Kellogg USA*,
   No. 2:08-cv-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ................... 17

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................................................ 11

*Werbel ex rel. v. Pepsico, Inc.*,
   No. C 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................... 17

*Williams v. Beechnut Nutrition Corp.*,
   229 Cal. Rptr. 605 (Cal. App. Ct. 1986) .................................................... 21, 22

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................*passim*

*Wright v. Gen. Mills, Inc.*,
   CIV.08CV1532L(NLS), 2009 WL 3247148 (S.D. Cal. Nov. 18, 2009) ........... 21

**STATUTES, RULES & REGULATIONS**

Federal Regulations
   56 F.R. 60421 ............................................................................................ 12
   56 F.R. 60421-01 ....................................................................................... 13
   58 Fed. Reg. 2302....................................................................................... 12

PLAINTIFF'S OPPOSITION TO                         Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

Federal Rules of Civil Procedure
    Rule 12(b)(6) ...............................................................................7, 8, 10, 11
    Rule 9(b) ...................................................................................................11
    Rule 56.......................................................................................................10

Cal. Com. Code § 2313 ......................................................................................21

California Business & Professions Code § 17200, *et seq*. .........................................4

California Business & Professions Code § 17500, *et seq*. .........................................4

California Civil Code § 1750, *et seq*. ......................................................................4

vi

Plaintiff Angel Aguiar ("Plaintiff") respectfully submits the following memorandum in opposition to the motion to dismiss Plaintiff's Class Action Complaint and memorandum in support thereof (ECF No. 14) (the "Motion" or "Defs.' Mem.") filed by Defendants Merisant Company ("Merisant") and Whole Earth Sweetener Company LLC ("Whole Earth") (collectively, "Defendants"). For the reasons stated below, Defendants' motion must be denied in its entirety.

## I.    INTRODUCTION

This case centers on Defendants' false and misleading labeling and marketing of PureVia as a purportedly all natural, stevia-based, sugar-alternative sweetener. Merisant is no stranger to the sugar-alternative sweetener market. Its blockbuster product Equal was the market leader in this segment for much of the 1990s.[1] Since the mid-2000s, however, sales of Equal have steadily plummeted as Splenda has taken over as the number one sugar-alternative sweetener.[2] With flagging Equal sales, Merisant diversified, partnering with beverage giant PepsiCo, Inc. ("Pepsi") to co-develop PureVia.[3] In promoting PureVia, Defendants have sought to capitalize on increasingly health-conscious consumers' heightened demand for natural products. In a 2008 joint Whole Earth-Pepsi announcement, a Pepsi executive remarked:

> For consumers who are demanding more natural foods and beverages and counting calories but don't want to compromise on taste, Pure Via® hits the sweet spot.[4]

---

[1]   http://www.businessweek.com/magazine/content/11_19/b4227017750321.htm (last visited March 2, 2014).

[2]   *Id*.

[3]   http://www.chicagobusiness.com/article/20130330/ISSUE01/303309964/pure-via-takes-on-truvia-in-the-non-sugar-bowl# (last visited March 2, 2014).

[4]   http://www.purevia.com/Media/081217Pure.aspx. (last visited March 2, 2014).

1

In reality, PureVia is about as natural as Merisant's other sugar-alternative sweetener, Equal (made of aspartame, which Merisant certainly does not market as natural).  PureVia in fact is made predominantly of the synthetic bulking agent dextrose (which is made from genetically-modified corn).  *See* Defs.' Mem. at 16 n.11.  Moreover, the miniscule amount of the stevia-derived extract Rebaudioside A ("Reb A") that is present in PureVia is manufactured through a patented, multistep, chemical extraction and purification process.  ¶25.[5]  Defendants claim that extracting Reb A is like making tea.[6]  While extracting Reb A does involve milling and steeping leaves in hot water, extraction is only the first of many steps.  Defendants omit that Defendants then add ethanol, methanol, or rubbing alcohol to this so-called "tea" in a patented multi-step process to achieve **purified** Reb A – the final ingredient in PureVia.  Merisant's Chief Executive Officer Paul Block has said: "You can't patent a plant."[7]  And, he's right.  You can't patent something, like a plant or water or air, which is absolutely natural.  Unlike a plant or water or air, not only is PureVia patented, but each main ingredient in PureVia is patented[8]

---

[5]    All "¶__" and "¶¶__" references are to Plaintiff's Class Action Complaint filed on Jan. 28, 2014.

[6]    *See, e.g.*, http://www.purevia.com/Media/080731Pure.aspx ("After the stevia leaves are milled, a freshwater brewing method is used to unlock the natural sweeteners, including the best-tasting extract of the plant – Reb A."); http://www.purevia.com/Purevia/HowPureViaIsMade.aspx ("Pure Via starts with stevia leaves, which are first milled and then steeped in water using a brewing method that is similar to brewing tea.") (last visited March 2, 2014).

[7]    http://www.businessweek.com/magazine/content/11_19/b4227017750321.htm (last visited March 2, 2014).

[8]    Upon information and belief, the patent for Purevia is U.S. Patent No. 8,323,716 B2 (Sweetener and Use) and the patent for the Reb A in PureVia is U.S. Patent No. 7,862,845 B2 (Process for Manufacturing a Sweetener and Use Thereof); although Plaintiff does not know the exact formulation of dextrose that is used in PureVia, dextrose certainly is a patented ingredient. *See, e.g.*, U.S. Patent No. 20130075948 A1 (Direct compressible dextrose composition). Natural flavors also are patented. *See, e.g.*, http://purecircle.com/news/pressreleases/purecircle-receives-new-notice-of-allowance-for-patent-application-related-to-its-proprietary-natural-flavors (last visited March 3, 2014).

2

PLAINTIFF'S OPPOSITION TO                                      Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

– and thus, as alleged by Plaintiff Aguiar, no reasonable consumer would consider PureVia to be an "all natural" product.

Defendants put forth four arguments for dismissing Plaintiff's claims, each of which lacks merit. ***First***, Defendants assert that Plaintiff fails to plausibly allege that any reasonable consumer could be deceived by Defendants' marketing and labeling of PureVia as "all natural" namely because Plaintiff has failed to provide either an objective or subjective definition of the term "natural." To the contrary, Plaintiff Aguiar plainly defines that "[a] reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed," ¶34, and alleges that PureVia does not meet this standard. *See, e.g.,* ¶¶6-8, 12. Where a determination as to whether Defendants' representations are false or misleading is a question of fact that is inappropriate for resolution on a motion to dismiss, nothing more is required. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Contrary to Defendants' contentions, Plaintiff's allegations are not refuted by the product's packaging simply because Defendants say so. ***Second***, Defendants seek to have this Court abstain from exercising its jurisdiction in deference to the U.S. Food and Drug Administration ("FDA") under the doctrine of primary jurisdiction, despite the fact that the FDA declined to make a determination as to whether products containing genetically engineered ingredients may or may not be labeled natural. *See* Defs.' Mem., Exhibit 2 (ECF No. 15-2). It is unquestionably within the purview of this Court to determine whether Defendants' labeling and marketing of PureVia are false and misleading and the cases cited herein support Plaintiff's position. *See, e.g., Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 102, 1035 (N.D. Cal. 2009). ***Third***, Defendants' argument that Plaintiff has not stated a claim for breach of express warranty fails

3

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

where, contrary to Defendants' own representations, PureVia explicitly represents, and thus warrants, that it is a purportedly all natural sweetener made primarily from stevia. ¶¶16, 69, 72. **Fourth**, despite Defendants' contention to the contrary, Plaintiff's unjust enrichment claim can be pleaded as a standalone claim when pleaded in the alternative for restitution based on quasi-contract.

## II.    STATEMENT OF FACTS

Plaintiff seeks to remedy the unfair, deceptive, and unlawful business practices of Defendants with respect to the marketing, advertising, labeling and sales of PureVia. Plaintiff Aguiar asserts claims on behalf of a nationwide class (or, in the alternative, a California class and other statewide classes with substantially similar laws) for unjust enrichment, breach of express and implied warranties, and violation of California's Unfair Competition Law ("UCL") (California Business & Professions Code §17200, *et seq*.), Consumer Legal Remedies Act ("CLRA") (California Civil Code §1750, *et seq*.), False Advertising Law ("FAL") (California Business & Professions Code §17500, *et seq*.), and the consumer protection laws of various states. ¶¶60-148. Defendants recognize that consumers are increasingly health conscious. ¶3; *see also* ¶¶29-36. To meet increasing demand for healthier products, Defendants marketed and developed a zero-calorie, stevia-based tabletop sweetener, called PureVia, which Defendants market and label as "all natural." ¶4. As part of a scheme to make PureVia more attractive to consumers, boost its sales, and ultimately increase its profits, Defendants use labeling terms such as "All Natural Zero Calorie Sweetener" and "Made From Pure Stevia Extract." ¶¶6, 16. Defendants also use natural imagery, such as the leaves of the stevia plant, in labeling, advertising, and marketing materials. ¶¶6, 16. The use of these terms and natural imagery is designed to, and does, induce consumers, such as Plaintiff Aguiar and the members of the putative

4

PLAINTIFF'S OPPOSITION TO                                          Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

classes, into believing that PureVia is an all natural sweetener primarily made from the stevia plant that does not contain ingredients that are either synthetic or harshly chemically processed and, therefore, is a healthy choice and is superior to competing sugar-alternative sweeteners, such as Splenda and Equal, that do not claim to be natural.  ¶¶6, 18.

Although Defendants lead consumers to believe that PureVia is primarily made from the stevia plant, PureVia actually is composed predominantly of the synthetic ingredient dextrose and only a minute quantity of a stevia-derived extract called Reb A.  ¶¶7, 18, 20.  PureVia is more than 95% dextrose.  ¶20.  Not only is there but a miniscule amount of stevia in PureVia, but the highly processed, high-purity stevia extract Reb A in PureVia is not what most consumers, including Plaintiff and members of the Classes, consider to be natural stevia.  ¶22.  Stevia typically refers to the crude stevia preparation (powder or liquid), which is obtained through the ***natural process*** of drying and crushing stevia leaves and then extracting them with hot water.  ¶23.  This natural crude stevia extract can be purchased as a supplement in health food stores.  *Id.*  Reb A, used in PureVia, is a highly purified form of stevia extract and is obtained through a harsh and unnatural multistep patented chemical purification process, where:

- The dried leaves of the Stevia plant are steeped in hot water for up to six hours.
- The water is then filtered and the pH adjusted by the addition of calcium hydroxide.
- After heating and cooling the filtrate, the solution is neutralized by adding ferric chloride.
- The precipitate that forms is filtered out of the solution and the filtrate is then deionized and decolorized by passing it through several different cation-exchange resins.
- The filtrate is concentrated and spray dried, resulting in a powdered extract.

5

- The powder is dissolved in methanol, warmed, and agitated to produce a precipitate of Stevioside, one of the sweet glycosides found in the Stevia plant extract.
- The precipitate is filtered from the solution.
- The remaining filtrate is evaporated to remove any remaining methanol and the resulting syrup diluted with water and passed through polysulfone based ultrafiltration membranes.
- The filtrate is concentrated and spray dried to obtain a powder of Reb A.
- The powder is dissolved in ethanol, agitated until a precipitate forms, and the precipitate is filtered and dried.
- The Reb A is further processed by mixing it again with ethanol and slowly agitating for about one hour, triggering the formation of crystals that are then filtered and dried.

¶25 (*see also* U.S. Patent No. 7862845 B2).

That PureVia is almost entirely made with a synthetic ingredient and that Reb A is obtained through a harsh chemical process are facts that are material to consumers, including Plaintiff and members of the Classes, who are seeking to purchase and consume natural products. ¶¶20, 26. Consumers, including Plaintiff and members of the Classes, do not consider a product with an ingredient that is harshly chemically processed and which is made up of a mostly synthetic ingredient to be natural. ¶26.

When purchasing PureVia, Plaintiff relied on Defendants' misrepresentations that PureVia is a natural sweetener primarily made from the stevia plant. ¶¶8, 12, 37. Plaintiff and the Classes paid a premium for PureVia over comparable sugar-alternative sweeteners that did not purport to be natural. ¶¶8, 39, 40. PureVia is consistently more expensive per packet than sugar-alternative competitors, like Merisant's own Equal and Sweet 'N Low, costing *approximately ten times more per packet than Sweet 'N Low and at least twice as much more per packet than Equal*. *Id.* Plaintiff would not have purchased PureVia had she known the truth. ¶¶8, 12. Thus, Plaintiff suffered an injury by

6

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

purchasing the Product at inflated prices. Plaintiff did not receive an all natural sweetener primarily made from the stevia plant; rather, she received a product that is made predominantly of synthetic ingredients with only a miniscule amount of Reb A, which itself is harshly chemically purified, in contradiction to Defendants' representations. In sum, Defendants' Motion must be denied in its entirety.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a pleading may be challenged and dismissed for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where, viewed in its totality, a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Indeed, the Supreme Court has cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. Because of the important societal goals forwarded by California's consumer protection statutes, motions to dismiss claims are highly disfavored. *See, e.g., Williams.*, 552 F.3d at 938. Accepting well-pleaded allegations as true, the Court must determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that

---

[9] Unless otherwise noted, all internal citations are omitted and emphasis is added.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## IV.   ARGUMENT

### A.   Plaintiff Plausibly Alleges Defendants' Statements are Likely to, and Have in Fact, Deceived Reasonable Consumers

Plaintiff alleges that she relied on Defendants' representations that PureVia is "All Natural" and made primarily of stevia when electing to purchase PureVia. Plaintiff further alleges that Defendants' representations were false and misleading, and even explains why such representations were false and misleading. Defendants have prominently labeled PureVia as "All Natural" and made with "Pure Stevia Extract," and the labeling has in fact misled reasonable consumers – Plaintiff Aguiar. Plaintiff alleged she did not receive a natural sweetener primarily made from the stevia plant; rather, she received a product that is made predominantly of synthetic ingredients with only a miniscule amount of Reb A, which itself is harshly chemically purified, in contradiction to Defendants' representations. Nothing more is required at this stage to state a claim.

### 1.   Whether Reasonable Consumers are Misled by the Products is a Question of Fact for a Jury

In *Iqbal*, the Supreme Court cautioned that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 662 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On the other end of the spectrum, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Because Plaintiff has pleaded sufficient non-conclusory factual material to establish each of the elements of her claims, her claims should survive a Rule 12(b)(6) motion to dismiss.

8

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

Indeed, Plaintiff's claims are governed by the "reasonable consumer" test, and she must show that """members of the public are likely to be deceived.""" *Williams*, 552 F.3d at 938. This standard requires "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). In *Williams*, the Ninth Circuit made clear that granting a motion to dismiss a UCL claim is a "rare situation," providing the example that dismissal would be proper if "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." 552 F.3d at 939. Even a true advertisement can be deceptive and thus actionable under the UCL if "couched in such a manner that is likely to mislead or deceive the consumer." *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332–33, 74 Cal. Rptr.2d 55 (1998). However, whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact, and therefore not appropriate for resolution on the pleadings. *See Williams*, 552 F.3d at 938–40.

As was the case in *Williams*, Plaintiff alleges that Defendants' labeling of PureVia as "All Natural" and "Pure Stevia Extract" is likely to deceive consumers, where the synthetic ingredient dextrose in fact is the predominant ingredient in PureVia and the minute amount of Reb A in PureVia is harshly purified through a patented multistep chemical process that includes bathing the extract in methanol. Thus, it would be inappropriate for the Court to decide whether the product packaging is deceptive to a reasonable consumer on this Motion.

Defendants engage in lengthy and protracted explanations for why ***they*** believe no reasonable consumer would be misled by their labeling and marketing. *See* Defs.' Mem. at 10-14. Defendants argue that no reasonable consumer would interpret PureVia's labeling to imply that it is not natural. Indeed, Defendants do

9

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

not even attempt to refute the fact that PureVia is not made primarily from the stevia plant, that it is processed through a harsh chemical process, or that the majority of the product is not stevia, but rather is comprised of synthetically-made dextrose. Indeed, unable to avoid these facts, Defendants seek to submit and rely upon materials outside the four corners of the Complaint (other than the product label) to claim that PureVia is, in fact, all natural. However, Defendants should not be allowed to improperly convert this motion into one for summary judgment prior to discovery having taken place. *Maldonado v. Dominguez*, 137 F.3d 1, 6 (1st Cir. 1998) (holding that, to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, the district court must ignore matters outside the pleadings). Moreover, even if the Court were to consider the documents, they do not support Defendants' arguments for dismissal. District courts in California typically have not granted motions to dismiss on plausibility grounds in food labeling cases, particularly since the question of whether it is plausible that a consumer is likely to be deceived typically raises issues of fact. *See Gitson v. Clover Stornetta Farms*, C-13-01517 EDL, 2014 WL 172338, at *13 (N.D. Cal. Jan. 15, 2014) (concluding that whether reasonable consumers would consider yogurt containing evaporated cane juice could be considered "all natural" could not be determined at the motion to dismiss stage); *Jou v. Kimberly-Clark Corp.*, C-13-03075 JSC, 2013 WL 6491158, at *6 (N.D. Cal. Dec. 10, 2013) (same) (diapers labeled "pure and natural" and wipes labeled "Natural Care"); *Kosta v. Del Monte Corp.*, No. 12-cv-1722-YGR, 2013 WL 2147413, at *12 (N.D. Cal. May 15, 2013) ("it is plausible that a reasonable consumer, whose food purchases are influenced by nutritional content, would rely on 'front of the package' labeling claims like 'fresh,' 'all natural,' and 'a natural source of antioxidants' when selecting food products."); *Brazil v. Dole Food Company*, No. 12-cv-1831-LHK, 2013 WL 1209955, at *14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    Civil No.: 2:14-cv-00670-RGK-AGR

(N.D. Cal. Mar. 25, 2013); *Colucci v. ZonePerfect Nutrition Co.*, No. 12–2907, 2012 WL 6737800, at *8 (N.D. Cal. Dec. 28, 2012); *Vicuña v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that a complaint was sufficiently particular under Rule 9(b) and inappropriate for dismissal on a Rule 12(b)(6) motion where it alleged that potato chips were deceptively labeled as "All Natural" despite the presence of a preservative); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1100-01, 1101 n.32 (C.D. Cal. 2012) (finding allegations plausible that Wesson Oil labeled as "100% Natural" was deceptively labeled because it contained genetically modified ingredients, noting that the plaintiffs had not merely stated in a conclusory fashion what consumers would expect); *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *5–6 (N.D. Cal. May 26, 2011) (denying motion to dismiss where plaintiff alleged that ice cream labeled "all natural" contained synthetic ingredients); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (finding it plausible that consumers would be deceived by the labeling of a beverage product as "All Natural" despite the presence of high fructose corn syrup, an allegedly unnatural ingredient); *Hitt v. Ariz. Beverage Co.*, LLC, No. 08cv809, 2009 WL 449190, at *7 (S.D. Cal. Feb.4, 2009) (denying motion to dismiss where the plaintiff alleged, among other things, that a reasonable consumer would find the "All Natural" labeling on the defendant's drink products, which contained high fructose corn syrup, deceptive). Therefore, Defendants' argument that no reasonable consumer could be misled by PureVia's labeling and packaging must be rejected.

### 2. Plaintiff's Complaint Provides a Clear and Consistent Understanding of the Word Natural

Defendants' argument than Plaintiff is required to plead an objective or subjective definition of "natural" to their liking is a red herring.  Plaintiff Aguiar

11

alleges that "[a] reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed," ¶34, and alleges that PureVia does not meet this standard. *See, e.g.,* ¶¶6-8, 12.  Even if Defendants' proffered definitions of "natural" were relevant (which, since Plaintiff's allegations must be taken as true, they are not), it is plain from the allegations of the Complaint that PureVia does not literally comply with either the dictionary definition of "natural" (*see* Defs.' Mem. at 8 ("'existing in or produced by nature'")) or with the FDA published guidance that Defendants reference, urging that "the term 'natural' can be used on food labeling so long as 'nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food,' 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)." *See* Defs.' Mem. at 8.  Plaintiff alleges the dextrose used in PureVia is synthetic, ¶20, which is the opposite of "existing in or produced by nature."  Moreover, Defendants incorrectly interpret FDA's guidance, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993), as "reject[ing] a proposal . . . to define food products as not natural if the ingredients have undergone more than 'minimal processing.'"  Defs.' Mem. at 8.  Rather than rejecting any such proposal, FDA declined to ***define*** what "minimal processing" means and further reiterated that "it will maintain its current policy [as it was established in General Principles Proposal, 56 F.R. 60421 at 60466] ***not to restrict the use of the term 'natural'*** . . . ." 58 Fed. Reg. 2302, 2407.  The General Principles Proposal, incorporated into the FDA's guidance, clearly indicates that FDA would continue to defer to USDA's definition of what "minimal processing" means:

> ***"Minimally processed" may include traditional processes such as smoking, roasting, freezing, drying, and fermenting. It may also include those processes that do not fundamentally alter the raw product and that only separate a whole, intact food into component***

12

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

*parts such as grinding meat or pressing fruits to produce juices. Solvent extraction, acid hydrolysis, chemical bleaching, and other such relatively complex processes do not meet the criteria for minimal processing, and, thus, if they have occurred, the product would not be allowed by USDA to be labeled as "natural."*

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 F.R. 60421-01, 60466.  Defendants' argument that PureVia's ingredients exist in nature (Defs.' Mem. at 10) and thus are purportedly truthful and not deceptive is simply belied by Plaintiff's allegations as well as FDA principles.[10]

In an analogous case, the plaintiffs in *Lynch v. Tropicana Products, Inc*., 2:11-CV-07382, 2013 WL 2645050 (D.N.J. June 12, 2013) alleged that Tropicana's "100% pure and natural" representations on the labels of not-for-concentrate orange juice were rendered false and misleading where the plaintiffs alleged the juice was highly processed through pasteurization and deaeration.  *Id*., at *1.  Tropicana contended that because the label also "states in all capital letters 'pasteurized' on the front of the label, it is not reasonable for a consumer to claim that she was misled into believing the statement, '100% pure and natural orange juice' meant it was akin to fresh-squeezed orange juice."  *Id*., at *6.  Citing the Ninth Circuit's *Williams* decision, the *Lynch* court held that the fact that "Tropicana has labeled its juice 'pasteurized' does not inherently 'provide a shield for liability for the deception' that its product has no added flavoring or is 100% pure and natural orange juice."  *Id*., at *7.  The *Lynch* court reasoned "there is no

---

[10]  Merisant defines "natural" to suit its needs.  For instance, Merisant, the maker of Equal, has sued its competitor, McNeil Nutritionals, LLC, the maker of Splenda, claiming that the representations that Splenda is natural are false and misleading because Splenda is "sweetened with a synthetic compound that is the result of a complex chemical process."  *See* Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, Ex. 1, *Merisant Company v. McNeil Nutritionals LLC*,  04-cv-05504 (E.D. Pa.), Complaint at ¶1.

13

PLAINTIFF'S OPPOSITION TO                                    Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

supporting evidence for the proposition that consumers of Tropicana's NFC juice, including Plaintiffs, understood the intricacies relating to the shelf life and processing of the orange juice so as to destroy a reasonable expectation of the product's freshness." *Id.* *See also In re Simply Orange Juice Mktg. & Sales Practices Litig.*, MDL No. 2361, 2013 WL 781785, at *4 (W.D. Mo. Mar. 1, 2013) (denying motion to dismiss on similar allegations). Similarly here, that Defendants labeled PureVia with "Pure Stevia Extract" does not mean that a reasonable consumer would understand that PureVia is not "all natural" as claimed, that the stevia extract is a version that is chemically purified with a bath in methanol and that the product is primarily made up of a synthetic ingredient - dextrose. That the side of the label reads that "Each ingredient is processed to assure consistency, stability and safety," does not further educate the consumer that the dextrose in PureVia is synthetic, not natural, and that the stevia extract in PureVia is not the natural version, but a harshly chemically-processed version. That Reb A is the second ingredient listed on the ingredient list also does not save Defendants' argument because the Ninth Circuit does not require consumers to scour the label to ascertain whether affirmative representations are true or not. Williams, 552 F.3d at 939-40. Even if a consumer saw Reb A as the second ingredient and realized the import, a reasonable consumer still would not realize that PureVia is not "all natural" and contains less than 5% Reb A.

In an effort to immunize themselves from liability, Defendants rely heavily on their website disclosures of what they claim is the definition of "all natural".[11]

---

[11] Plaintiff does not allege she viewed or relied on the website disclosures referenced in the Complaint, ¶17. Thus, these allegations do not and cannot form the basis of her claim. *See, e.g., Bruton v. Gerber Products Co*., 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) (granting motion to dismiss as to website statements the plaintiff did not view). As such, Defendants also cannot rely on this matter, which plainly is outside the pleadings. *See* Plaintiff's Opposition to Defendants' Request for Judicial Notice, filed concurrently herewith.

14

PLAINTIFF'S OPPOSITION TO                                      Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

The Ninth Circuit has foreclosed the defensive tactic.  Just as small print and back-of-the-label disclosures do not insulate companies from liability stemming from otherwise misleading affirmative statements, reasonable consumers also are not to be expected to scour a manufacturer's website to be sure prominent representations are not false. The Ninth Circuit squarely addressed this issue in *Williams*:

> [R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

552 F.3d at 939–40.  Defendants cannot, on the one hand, claim that PureVia is an "all natural" sweetener, while, at the same time, attempt to rely upon purported disclosures on their website which they argue disclaim a reasonable consumer's belief that the product is all natural.  Moreover, consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims, such as "natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer. *See, e.g., Jou*, 2013 WL 6491158, at \*10.

Defendants' cited cases do not require a contrary result.  For instance, Defendant's reliance on *Pelayo v. Nestle USA, Inc*., No. CV 13-5213-JFW (AJWx), 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013), where the plaintiffs challenged that the "all natural" labeling was deceptive where the defendant's pasta products contained xanthan gum, soy lecithin, sodium citrate, maltodextrin, sodium phosphate, disodium phosphates, and ferrous sulfate, is not persuasive. At least one court has refused to follow *Pelayo*, reasoning:

15

PLAINTIFF'S OPPOSITION TO                                Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

> Without explanation, the *Pelayo* court concluded that "[g]iven the FTC's findings that the term 'natural' can be used in numerous contexts, it is implausible that 'a significant portion of the general consuming public or of targeted consumers' would be deceived or mislead by the use of the term 'All Natural' on the Buitoni Pastas." 2013 WL 5764644 at *5. As explained above, this conclusion is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit. This Court accordingly declines to follow Pelayo's holding.

*Jou*, 2013 WL 6491158, at *8. Tellingly, Defendants cite no cases finding that reasonable consumers could not interpret the terms "pure" or "natural" to mean that a product was free of synthetic ingredients. *See, e.g., Balser v. Hain Celestial Group, Inc*., CV 13-05604-R, 2013 WL 6673617, at *1 (C.D. Cal. Dec. 18, 2013) (finding "natural" and "100% vegetarian" on a cosmetic line products not plausibly misleading to the reasonable consumer because cosmetics are manufactured (unlike stevia, which can exist in nature) and because "100% vegetarian" does not typically mean made "only from vegetable matter," as the plaintiffs alleged, but rather, made "without animal products" or "without meat"); *Manchouck v. Mondelez Int'l Inc*., No. C 13-02148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (representing a product as being "made with real fruit" was not deceptive where the representation "made with real fruit" on the front of the packaging was confirmed by the disclosure of fruit puree in the ingredients list; rejecting argument that fruit puree cannot be classified as "real fruit"); *Shaker v. Nat.'s Path Foods, Inc*., No. EDCV 13-1138-GW (OPx), 2013 WL 6729802, at *4 (C.D. Cal. Dec. 16, 2013) (consumers would not be misled into believing that a cereal box contained strawberries where "[n]o labels anywhere on the packaging described[d] the [c]ereal as consisting of dried strawberries" and the packaging prominently featured the words "Blueberry Cinnamon" on the top and front of the box); *Rooney v. Cumberland Packing Corp*., No. 12-CV-0033-H (DHB), 2012 WL 1512106, at *4 (S.D. Cal. 2012) (reasonable consumers would not be misled where the alleged

16

PLAINTIFF'S OPPOSITION TO                                    Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS

deceptive statement appeared "nowhere on the box," but the corrective statement appeared on the packaging nine times.); *Red v. Kraft Foods, Inc.*, No. CV 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (granting defendant's motion to dismiss and concluding that packaging that claims that crackers are made with "real vegetables" and depicts images of vegetables is not likely to mislead consumers into believing that the product is healthy and contains a "significant amount" of vegetables); *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456, 2010 WL 2673860, at *4 (N.D. Cal. July 2, 2010) (concluding that packaging for "Cap'n Crunch's Crunch Berries" did not misrepresent that the product contained real fruit because the product did not claim it was made with real fruit or that it was nutritious, and because the Crunch Berries were "described as a 'SWEETENED CORN & OAT CEREAL' and shown as brightly-colored balls of cereal that no reasonable consumer would believe [we]re made from real berries"); *Videtto v. Kellogg USA*, No. 2:08-cv-01324, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (finding implausible the plaintiff's allegations that the packaging for "Froot Loops" misled consumers since the packaging "truthfully depicts that cereal in the shape of multi-colored rings, rings that do not resemble any known fruit" and because "the fanciful use of [the] nonsensical word [Froot] cannot reasonably be interpreted to imply that the Product contains or is made from actual fruit"); *Sugawara v. Pepsico, Inc.*, 2:08-CV-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) (holding that the label of "Crunchberries" brand cereal could not mislead a reasonable consumer into believing that the cereal included actual berries, because the front label identified the product as "sweetened corn and oat cereal," and because "Crunchberry" is a fanciful product name, not a description of a real fruit); *McKinnis v. Kellogg USA*, CV-07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) (same); *McKinniss v. Sunny Delight Beverages Co.*, CV-07-02034, 2007

17

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

WL 4766525 (C.D. Cal. Sept. 4, 2007) (the allegedly misleading statement appeared "nowhere on the box").

### B.      The Doctrine of Primary Jurisdiction Is Inapplicable

In an argument largely intended to distract this Court from the real issues, Defendants argue that the doctrine of primary jurisdiction requires the dismissal or stay of Plaintiff's suit in favor of the FDA's regulatory process. *See* Defs.' Mem. at 17.   Defendants recast the FDA's recent announcement declining to define "natural" into a pronouncement that FDA regulation of "natural" is imminent. Contrary to Defendants' assertion, the January 6, 2014 letter does not support Defendant's argument as it clearly states that FDA ***declined*** to make a determination as to whether products containing genetically engineered ingredients may or may not be labeled natural.  *See* Defs.' Mem., Ex. 2, Letter from L. Kux, dated January 6, 2014, at 3.  There is simply no basis for Defendants' claim that the FDA intends to establish a definition of "natural" simply mischaracterizes the facts.  *See generally id.,* Letter from L. Kux, dated January 6, 2014.  The FDA explained that its "limited resources" do not permit the agency to address the issue at hand.  *Id.* at 2.  Moreover, Defendants' speculative expectation of the citizen petition ignores the FDA's explicit warnings that "even if [FDA] were to embark on a public process to define 'natural' in the context of food labeling, ***there is no assurance that [they] would revoke, amend, or add to the current policy, or develop any definition at all."*** *Id.*  Inviting courts across the nation to stay or dismiss hundreds of pending "natural" suits for several years, while having no assurance of any change forthcoming, is impracticable at best.  The FDA's letter does not up-end the wealth of case law, as Defendants would have it, where California district courts routinely have held that the primary jurisdiction doctrine does not apply to suits based on "natural" claims.

18

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

The doctrine of primary jurisdiction "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The Ninth Circuit has restricted the doctrine's application to a limited set of circumstances, explaining:

> **[T]he doctrine is not designed to "secure expert advice" from agencies "every time a court is presented with an issue conceivably within the agency's ambit."** Instead, it is to be used **only** if a claim "requires resolution of an **issue of first impression**, or of a **particularly complicated issue** that Congress has committed to a regulatory agency . . . ."

*Id.* Not surprisingly, California courts have conclusively determined that the resolution of cases involving "natural" claims neither requires FDA's expertise nor does it invade the integrity of FDA's regulatory scheme, and thus the doctrine's application to "natural" suits is not appropriate. *See, e.g., Fagan v. Neutrogena Corp.*, 5:13-CV-01316-SVW-OP, 2014 WL 92255, at *1 (C.D. Cal. Jan 8, 2014) (declining to bar plaintiff's "natural" claims and noting that "FDA has affirmed that 'proceedings to defined the term 'natural'. . . do not fit within [its] current health and safety priorities'"); *In re ConAgra Foods, Inc.*, CV 11-05379-MMM AGRX, 2013 WL 4259467, at *2 (C.D. Cal. Aug. 12, 2013) (declining to dismiss or stay proceeding under the primary jurisdiction doctrine because FDA clearly refused to define the word "natural"); *Ivie v. Kraft Foods Global, Inc.*, C-12-02554-RMW, 2013 WL 3296616, at *7-8 (N.D. Cal. June 28, 2013) (denying motion to dismiss plaintiff's "natural" claims on the basis of primary jurisdiction); *Janney v. Gen. Mills*, 12-CV-03919-WHO, 2013 WL 5587945, at *2 (N.D. Oct 10, Cal. 2013) (declining to apply the doctrine of primary jurisdiction and noting that "[j]udges in this district have repeatedly declined invoking the . . . doctrine in cases

19

asking whether the term 'natural' as used on food labels is false or misleading . . ."). The FDA's letter does not reverse this precedent.

Nevertheless, Defendants argue that permitting courts to develop a definition for "natural" precludes a "consistent[ ] and uniform[ ]" resolution of "this important issue," and that FDA's expertise is necessary to achieve that result. Defs.' Mem. at 18. This argument lacks merit. ***First***, the authority vested to the particular agency must be such "'that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question.'" *U.S. v. Culliton*, 328 F.3d 1074, 1082 (9th Cir. 2003). As the court in *Lockwood v. Conagra Foods, Inc*., 597 F. Supp. 2d 102, 1035 (N.D. Cal. 2009) explained, FDA's continued policy on ***not*** defining the term "natural" renders the doctrine of primary jurisdiction inapplicable:

> ***Application of the doctrine is not appropriate [in "natural" suits). At a minimum, various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources.***

*Id.* at 1035.

> Although the FDA acknowledges that consumers are being misled by the use of the term "natural," it has declined to adopt any regulations governing this term. . . . ***[A]t the time the FDA declined to formally define "natural" it was aware of and had reviewed state regulation of the use of the term, yet it made no mention of the need for uniformity or a preemptive federal regulation***; instead, it declined to take any action.

*Id.* at 1034.

***Second***, while "competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient." *Culliton*, 328 F.3d at 1082. The determination of whether labeling is false or deceptive under California law is not an issue outside "the conventional experience

20

of judges." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Indeed, courts are not called upon to determine whether a product is or is not natural, but only whether a manufacturer's use of the term is false and misleading. "[S]tate law claims based upon the used of the term 'natural' is ***not an issue of first impression, does not require technical expertise . . . and is not a particularly complicated issue outside the ability of the [c]ourt to consider and decide***." *Wright v. Gen. Mills, Inc.*, CIV.08CV1532L(NLS), 2009 WL 3247148, at *3 (S.D. Cal. Nov. 18, 2009). Indeed, "***every day courts decide whether conduct is misleading***." *Lockwood*, 597 F. Supp. 2d at 1035; *also see Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one ***courts are well-equipped to handle***, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").

In light of the FDA's recent refusal to define "natural" and well-established case law, dismissal on primary jurisdiction grounds is not appropriate.

### C.    Plaintiff Adequately Pleads Breach of Express Warranty

To plead a cause of action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty, (2) reasonable reliance thereon, and (3) proximate injury. *See* Cal. Com. Code §2313; *Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Cal. App. Ct. 1986). A complaint sufficiently pleads breach of express warranty, where, as here, it alleges the defendant "'utilized the advertising media to urge the use and application of [the product] and expressly warranted to the general public . . . that said product was effective, proper and safe for its intended use.'" *Id.* "Statements made by a manufacturer through its advertising efforts can be construed as warranty

21

statements." *Aaronson v. Vital Pharm., Inc.*, 09-CV-1333 W (CAB), 2010 WL 625337, at *6 (S.D. Cal. Feb 17, 2010) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13, 220 Cal. Rptr. 392, 396 (Ct. App. 1985)). Those same principles, however, "do not require the class representative to plead or prove an unrealistic degree of specificity . . . when the unfair practice is a fraudulent advertising campaign." *In re Tobacco II Cases*, 207 P.3d 20, 26 (Cal. 2009); *also see Beechnut Nutrition Corp.*, 229 Cal. Rptr. at 609. (Reliance need not be specifically plead if it can be "reasonably inferred from the tenor and totality of the allegations in the complaint.").

Here, Defendants challenge that Plaintiff has failed to allege the affirmations of fact or promises that became the basis of the bargain – namely that Plaintiff's claims challenging PureVia as "all natural" cannot be the basis of an express warranty claim. Defendants revert to their initial argument claims that the term "natural" is "inherently ambiguous," and thus, they cannot be held liable for making any false and misleading statements. Defs.' Mem. at 20. To the contrary, Plaintiff specifically identified the exact terms of Defendants' labeling that created the express warranty – that "PureVia Stevia" is an "all natural" sweetener primarily made from stevia, when, in fact, it is not natural and is not primarily made from the stevia plant. ¶¶16, 69, 72. Consequently, Plaintiff sufficiently set forth the affirmations of fact or promises that became the basis of the bargain. *See Parker v. J.M. Smucker Co.*, C 13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ("'All Natural' is an affirmative claim about a product's qualities, and it does not amount to mere puffery because it is not outrageous and generalized."). California district courts previously have found that plaintiffs stated express warranty claims based on allegedly misleading food labeling. *See, e.g.*, *Allen v. ConAgra Foods, Inc.*, 13-CV-01279-JST, 2013 WL 4737421, at *11 (N.D. Cal.

22

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

Sept. 3, 2013) ("fat free" and "calorie free" butter spray); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 900 (N.D. Cal. 2012) ("Pure, Natural & Organic" cosmetic products); *Vicuna v. Alexia Foods, Inc.*, 11–cv–6119–PJH, 2012 WL 1497507, at \*2 (N.D. Cal. Apr. 27, 2012) ("All natural" potato products). Because Plaintiff has plausibly alleged that PureVia is not "all natural" or primarily made from stevia, Plaintiff adequately states a claim for common law breach of express warranty. *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1107, 1118 (S.D. Cal. 2011) (noting that determination as to whether a particular statement is "'an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made'"). Accordingly, the Court should not dismiss Plaintiff's breach of express warranty claim.

### D.    Plaintiff Adequately Pleads Unjust Enrichment

Defendants move to dismiss Plaintiff's unjust enrichment claim contending that "'there is no cause of action in California'" or other states for unjust enrichment. Defs.' Mem. at 19-20. Although some California courts certainly have taken that position, other courts allow unjust enrichment claims to go forward, where, as here, the plaintiff pleads unjust enrichment in the alternative for restitution based on quasi-contract. ¶¶60-66. In *Astiana*, 2011 WL 2111796, at \*11, Judge Hamilton refused to dismiss an unjust enrichment claim raised in the context of a misleading "natural" labeling case, explaining that "[i]n California, unjust enrichment is typically alleged in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract." Judge Hamilton concluded that unjust enrichment is permissible as a "fall-back theory" applicable upon "finding of liability on some other non-contractual claim." *Id*.

23

Although Plaintiff's unjust enrichment claim ultimately may turn out to be superfluous, dismissal at this juncture would be premature.  As Judge Hamilton explained in yet another suit permitting an unjust enrichment claim to proceed, a "defendant is not entitled to have a cause of action dismissed for failure to state a claim simply because it conflicts with another cause of action."  *Oracle Corp. v. SAP AG*, C 07-1658 PJH, 2008 WL 5234260, at *9 (N.D. Cal. Dec. 15, 2008). Instead, to the "extent that plaintiff [ ] [is] ultimately able to prevail under a breach of contract theory or a tort theory, [she] will be precluded from also recovering under a claim of unjust enrichment."  *Id.; also see Oki Am., Inc. v. Microtech Intern., Inc*., 872 F.2d 312, 314 (9th Cir. 1989) (observing that for pleading purposes, pleading of inconsistent causes of action is permissible).  Accordingly, the Court should not dismiss Plaintiff's unjust enrichment claim.

## V.   CONCLUSION

Wherefore, for the foregoing reasons, Defendants' Motion should be denied in its entirety.

DATED:  March 3, 2014

Respectfully submitted,

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*s/* Hal D. Cunningham
Christopher Burke (243048)
cburke@scott-scott.com
Hal D. Cunningham (243048)
hcunningham@scott-scott.com
4771 Cromwell Avenue
Los Angeles, CA 90027
Telephone: 213-985-1274
Facsimile: 213-985-1278

Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

24

The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

E. Kirk Wood
WOOD LAW FIRM, LLC
P.O. Box 382434
Birmingham, AL 35238
Telephone: 205-908-4906
Facsimile: 866-747-3905
ekirkwoodl@bellsouth.net

Greg L. Davis
DAVIS & TALIAFERRO
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001
gldavis@knology.net

*Attorneys for Plaintiff*

25

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

Civil No.: 2:14-cv-00670-RGK-AGR

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 3, 2014.

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP


*/s* Hal D. Cunningham
Hal D. Cunningham
hcunningham@scott-scott.com
4771 Cromwell Avenue
Los Angeles, CA 90027
Telephone: 213-985-1274
Facsimile: 213-985-1278

26

PLAINTIFF'S OPPOSITION TO                                    Civil No.: 2:14-cv-00670-RGK-AGR
DEFENDANTS' MOTION TO DISMISS