SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
CHRISTOPHER M. BURKE (214799)
cburke@scott-scott.com
4771 Cromwell Avenue
Los Angeles, CA 90027
Telephone: 213-985-1274
Facsimile: 213-985-1278

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
JOSEPH P. GUGLIELMO (*pro hac vice*)
jguglielmo@scott-scott.com
The Chrysler Building
405 Lexington Avenue
40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334

*Counsel for Plaintiff*

[Additional Counsel on Signature Page.]

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
AMANDA F. LAWRENCE (*pro hac vice*)
alawrence@scott-scott.com
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL AGUIAR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERISANT COMPANY, and WHOLE EARTH SWEETENER COMPANY, LLC,<br><br>Defendants. | Civil No.: 2:14-cv-00670-RGK-AGR<br><br>**DECLARATION OF AMANDA F. LAWRENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ENTRY OF FINAL JUDGMENT AND MOTION FOR APPROVAL OF ATTORNEYS' FEE AWARD, EXPENSE REIMBURSEMENT, AND INCENTIVE AWARD**<br><br>Judge:   Hon. R. Gary Klausner<br>Date:    February 2, 2015<br>Time:   9:00 a.m.<br>Ctrm:   850 |

1    Pursuant to 28 U.S.C. §1746, Amanda F. Lawrence, under penalty of
2   perjury, declares that the following is true and correct to the best of her knowledge
3   and belief:

4    1.    I am a partner at the law firm of Scott+Scott, Attorneys At Law, LLP
5   ("Scott+Scott"), and counsel for Plaintiff Angel Aguiar ("Plaintiff" or "Aguiar")
6   and the proposed Settlement Class.[1]  I have personal knowledge of the matters set
7   forth herein based on my active participation in all material aspects of the
8   prosecution of the action, Case No. 2:14-CV-00670-RGK(AGRx) (the "Action"),
9   and could testify competently thereto if called upon to do so.  I submit this
10  declaration in support of Plaintiff's Motion for Final Approval of Class Action
11  Settlement and Request for Final Judgment ("Motion for Final Approval") and
12  Motion for Approval of Attorneys' Fee Award, Expense Reimbursement, and
13  Incentive Award.

14  **I.    INTRODUCTION**

15   2.    I represent Plaintiff Aguiar in this matter, and the Court has appointed
16  Scott+Scott as one of the Class Counsel for the proposed Settlement Class along
17  with the Wood Law Firm, LLC ("Wood Law").  I, and my firm, Scott+Scott, along
18  with Wood Law, have been responsible for the prosecution of this Action on behalf
19  of Plaintiff and have led the negotiations on behalf of her to achieve the
20  Settlement.  From the outset of the investigation and filing of the Action, through
21  the negotiation and drafting of the Settlement now before the Court, Scott+Scott
22  and Wood Law have vigorously represented the interests of their client and the
23  Class members to obtain the best possible recovery.  I believe Plaintiff's
24  Counsel's efforts have resulted in a Settlement for the Class that is fair, reasonable,
25  and adequate under Rule 23(e).

26

27  [1]    All capitalized terms not otherwise defined herein are defined in the Class
28  Settlement Agreement (the "Agreement" or "Settlement").  ECF No. 109-1.

1

DECLARATION OF AMANDA F. LAWRENCE          Civ. No.: 2:14-cv-00670-RKG(AGRx)

## II.   TERMS OF THE SETTLEMENT

3.   The Settlement created a $1,650,000 cash fund (the "Settlement Fund") where Eligible Class Members will receive, at a minimum, $5.00 in a cash refund, and could receive up to $30.00 in cash – a significant recovery considering the damages model that would likely be employed if this matter proceeded to trial and the fact that $5.00 is more than the price of certain Pure Via Consumer Products.  The Settlement also requires Defendants to make substantive changes to the Pure Via Consumer Product packaging and amendments to the PureVia.com website (the "Injunctive Relief") that resolve Plaintiff's claims that the labeling and marketing of the Pure Via Consumer Products were false and misleading.

4.   Upon final approval of the Settlement, the claims against the Defendants will be dismissed with prejudice, subject to the terms of the Agreement and the Final Judgment that the Parties ask the Court to enter.

## III.   PROCEDURAL HISTORY OF THE ACTION

### A.   <u>The Complaint and the Motion to Dismiss</u>

5.   Scott+Scott performed extensive work identifying and investigating the potential factual and legal claims and drafting and filing the initial Complaint on behalf of Plaintiff Aguiar and the Proposed Class.  For example, Scott+Scott reviewed and scrutinized the Pure Via Consumer Products' labeling and advertising and conducted independent scientific research regarding the manufacturing process for the Pure Via Consumer Products and reviewed the various patents for such processes.

6.   The Action was filed on January 28, 2014 and the Complaint was served on January 31, 2014.  ECF Nos. 1, 7, 8.  From that moment on, the Action was litigated vigorously and expediently.

2

7.     Within a month, Defendants swiftly moved to dismiss the Complaint, filing a Motion to Dismiss, attaching a lengthy memorandum and declaration with a dozen exhibits.  ECF No. 14.

8.     Plaintiff opposed the Motion to Dismiss on March 3, 2014 (ECF No. 26), and, one week later, Defendants filed their reply in further support of the Motion to Dismiss (ECF No. 34).  In conjunction with the opposition to the Motion to Dismiss, Plaintiff also submitted – and Defendants opposed – several notices of supplemental authority.  *See, e.g*,  ECF Nos. 52, 54.

9.     The Court opted to take the Motion to Dismiss under submission, and on March 24, 2014, it denied (in large part) Defendants' Motion to Dismiss, but dismissed Plaintiff's unjust enrichment claims.  ECF No. 56.

10.     Therefore, Defendants answered the Complaint on May 22, 2014 (ECF No. 70), denying the majority of the allegations in the Complaint.

**B.     Discovery Proceeds Rapidly**

11.     The discovery process began soon after the Complaint was served. Before the Court even issued its decision on the Motion to Dismiss, the Parties each served comprehensive document requests and interrogatories on each other on March 21, 2014.

12.     Soon thereafter, the Parties conferred and submitted their Joint Rule 26(f) Report (ECF No. 49) and Proposed Protective Order (ECF No. 50) to the Court on March 27, 2014.

13.     On May 5, 2014, the Court held an in-person scheduling conference and an aggressive class certification schedule was set, thus mandating even more comprehensive and rapid discovery.

14.     To that end, both Plaintiff and Defendants produced their documents in April and May of 2014.  Plaintiff's Counsel reviewed over 25,000 pages of

3

documents, including numerous lengthy product studies and voluminous Excel spreadsheets.

15.   Plaintiff issued a Notice of Rule 30(b)(6) Deposition on Defendants and, on May 14, 2014, took the all-day deposition of Cheryl Gill, director, North American Marketing, Merisant US, Inc. in Chicago, Illinois.

16.   Defendants likewise sought depositions and, on May 27, 2014, took the all-day deposition of Plaintiff Aguiar in Los Angeles, California.

17.   Plaintiff's Counsel also issued five subpoenas to third-party marketers and retailers of Pure Via Consumer Products.

**C.   Comprehensive Class Certification Briefing Ensues**

18.   Pursuant to the Court's aggressive schedule, Plaintiff filed her Motion for Class Certification on May 29, 2014 (ECF No. 71).  That filing included my declaration attaching fifteen exhibits, including two expert reports (ECF No. 72).

19.   One expert submitted a detailed report concerning the appropriate class-wide calculation of damages in consumer cases and in this case in particular.

20.   The other expert, a professor at the Wharton School at the University of Pennsylvania, submitted a report pertaining to consumer perceptions and understanding of the term "natural" in the food context.

21.   Within two weeks of filing these expert reports, Defendants deposed both of Plaintiff's class certification experts.  Plaintiff's damages expert, Christian Tregillis, CPA, ABV, CLP, was deposed for a full day on June 5, 2014 in Los Angeles, California, while Plaintiff's marketing expert, Professor Gal Zauberman, was deposed on June 13, 2014 in Philadelphia, Pennsylvania.

22.   On June 30, 2014, Defendants not only opposed Plaintiff's Motion for Class Certification (ECF No. 86), but also separately moved for an Order Denying Class Certification (ECF No. 85), which itself attached twenty-four exhibits to a supporting declaration (ECF No. 87).

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

23.     In conjunction with their Opposition to Plaintiff's Motion for Class Certification, Defendants likewise submitted two expert reports:  one concerning damages and one attempting to refute the arguments made concerning consumer perception of the term "natural."

24.     Plaintiff's Counsel noticed the depositions of both of these experts for the week of July 7, 2014 and were prepared to take their depositions in Washington, D.C.

25.     On July 7, 2014, Plaintiff filed her opposition to Defendants' Motion to Deny Class Certification.

26.     A hearing on both motions pertaining to Class Certification was scheduled before the Court on July 28, 2014.

27.     As discussed below, the Parties were able to reach resolution of the Action and thus both motions were withdrawn on July 14, 2014 (ECF Nos. 104 and 105).

**D.    Settlement Negotiations**

28.     While the Action was rapidly and contentiously progressing through discovery and class certification, the Parties also began to discuss potential resolution of the Action.

29.     On April 29, 2014, I first spoke with counsel for Defendants telephonically regarding settlement.  That conversation continued on a number of phone calls spanning over two months.  During that time period, numerous settlement proposals were offered, rejected, and modified.

30.     The settlement-related negotiations were hard-fought, and it appeared at many junctures that the Parties would not reach agreement.  During the negotiations, multiple proposals were exchanged, rejected, and modified prior to being accepted.  Accordingly, the Proposed Settlement is the product of extensive, arms-length, and vigorously contested settlement negotiations.

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

31.     Ultimately, on July 8, 2014, after a series of counter proposals and phone calls, on the eve of the depositions of Defendants' class certification experts, we were able to reach a resolution in principle.

32.     On July 10, 2014, the Parties entered into a "Memorandum of Understanding," setting forth the parameters of the agreed-upon Settlement and phoned the Court to inform it of this development.  As mentioned above, all Parties then withdrew their class certification related motions.

33.     Over the ensuing weeks, the Parties worked together to draft the Class Action Settlement Agreement and to select the Claims Administrator.

34.     I caused the Class Action Settlement Agreement as well as the documents in support of preliminary approval of the Settlement to be filed with the Court on August 18, 2014.

35.     In my opinion, this Settlement demonstrates that the best practicable result was achieved on behalf of the Class.

36.     On October 2, 2014, this Court granted preliminary approval of the Settlement, found that the proposed Settlement Class met the requirements under Rule 23 Sections (a) and (b), and granted Plaintiff's Motion for Certification of the Settlement Class.  ECF No. 113.   The Court also found the proposed Notice to be a sufficiently balanced, accurate, and informative way to satisfy due process concerns and therefore approved the Notice Plan.  *Id.*

37.     After phone calls with the Court, on October 16, 2014, the Parties filed a joint stipulation suggesting dates regarding final approval of the Settlement (ECF No. 114).  The Court granted the dates filed in that stipulation on October 17, 2014 (ECF No. 115), including that the Fairness Hearing will be held on February 2, 2015 and the deadline for the filing of objections is January 2, 2015.

38.     Since the preliminary approval of the Settlement, Scott+Scott and Wood Law have worked to ensure the full and proper administration of the

6

1  Settlement.

2      39.    Plaintiff's Counsel seeks final approval of the Settlement after months

3  of zealous negotiations by the Parties on behalf of their respective clients.

4  **IV.    THE NOTICE PROCESS**

5      40.    The terms of the Settlement are fully set forth in the Agreement and in

6  the Notice.  Pursuant to the Court's Order, starting on November 7, 2014, copies of

7  the Notice were mailed to potential Class Members.  As of November 7, 2014, an

8  aggregate of 1,899 Notice Packets had been mailed to potential Class Members.

9  *See*  Declaration of Jeffrey D. Dahl with Respect to Implementation of the Notice

10 Plan and Performance of Required Settlement Administration Activities (the "Dahl

11 Decl.") (attached hereto as Exhibit A), ¶11.

12     41.    Additionally, on October 13, 2014, the Claims Administrator issued a

13 general press release and a full press release on October 27, 2014.  Dahl Decl., ¶22.

14 Notice was also published in *People Magazine* on November 7, 2014 and in *USA*

15 *Today* on October 30, 2014 – to a combined readership of 45 million.  Dahl Decl.,

16 ¶13.  Furthermore, the Claims Administrator caused over 25.3 million web ad

17 impressions to be made and created a website dedicated to the Settlement

18 (https://www.PureViaSweetenerSettlement.com/) which, as of December 14, 2014,

19 has drawn 34,677 visits.  Dahl Decl., ¶¶23, 25-27.

20     42.    The Notice mailed, published, and posted advised all recipients that

21 Class members who did not wish to participate in the Settlement could exclude

22 themselves from the Class.  The Notice also advised all recipients that Class

23 members could object to any aspect of the Settlement, including the request for an

24 award of attorneys' fees and reimbursement of expenses.  The Notice provided

25 straightforward instructions for Class Members to file their requests for exclusion

26 and objections.

27

28

43.    The Notice stated that the deadline for filing and serving objections to any aspect of the Settlement is January 2, 2015.   The Notice also set forth the requirements for, and instructions on, submitting a valid request for exclusion or a valid objection.  As of December 14, 2014, Dahl averred that it had received only two requests for exclusion from the Class.  *See* Dahl Decl., ¶32.

44.    This Court scheduled the filing of Plaintiff's Memorandum in Support of Final Approval of Class Action Settlement and the Application for Award of Attorneys' Fees and Expenses before the final objection date for Class members, so that Class members could review and respond to the two Motions and all papers filed with them.   As of December 14, 2014, though, no objections to the Settlement or the proposed fee request have been filed.   Dahl Decl., ¶33.   Should any objections be filed, Plaintiff's Counsel will respond to them within the schedule set by the Court.

## V.    PLAINTIFF'S COUNSEL BELIEVES THE SETTLEMENT MERITS APPROVAL

45.    Plaintiff's Counsel firmly believes that the Settlement is fair, reasonable, and adequate under applicable Ninth Circuit law.  This assessment is based on Plaintiff's Counsel's extensive investigation, analysis of the marketing materials at issue, extensive research into the applicable law in conjunction with both the Motion to Dismiss and the Motion for Class Certification, consultation with experts, analysis of thousands of pages of documents, discussions with counsel for Defendants, an analysis of the amount obtained in settlement versus the possibility of obtaining a larger judgment at trial, the funds available to settle, an evaluation of the certainty of a recovery versus the risks of no recovery at all, Plaintiff's Counsel's past experience in other class actions, the serious disputes between the Parties concerning damages and liability, and the favorable reaction of the Class.

8

46.    Plaintiff remains convinced her case has merit, but recognizes substantial risk is involved in continued litigation.    Based on extensive investigation and discovery, Plaintiff believes that she could obtain class certification, defeat all dispositive motions filed by Defendants, and proceed to a trial on the merits where she could meet her burden of demonstrating that reasonable consumers are misled by Defendants' advertising of Pure Via as "natural".

47.    Plaintiff and Plaintiff's Counsel recognize, however, the expense and length of continued proceedings necessary to prosecute the claims through trial and appeal, and have taken into account the uncertain outcome and risk of litigation, as well as the difficulties and delays inherent in such litigation.    In particular in this case, one of the hotly contested issues in this action would be consumer perception of "natural" to determine the materiality and deceptiveness of Defendants' labels. Furthermore, liability in this Action will turn on whether Defendants' labeling message is likely to deceive the reasonable consumer.    Such issues would likely be the subject of competing expert testimony, and indeed, already were at the class certification level.    Continued litigation of the Action thus would require extensive resources and Court time.    I believe the monetary, advertising, marketing, and labeling terms set forth in the Proposed Settlement confer substantial benefits upon the Settlement Class members.    Based on the above-described evaluation, I have determined that the Proposed Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.

48.    Defendants have denied, and continue to deny, any liability and maintain that their current labeling is truthful and not misleading and that it does not imply that Pure Via products consist primarily of unprocessed stevia. Defendants continue to maintain that each of its ingredients exists in nature or have been extracted from plant material through biological processes.    Defendants have

9

already vigorously opposed certification of a litigation class and argued, among other things, that individualized issues related to damages predominate because the proposed class members purchased the Pure Via Consumer Products for varying reasons, had varying interpretations of the statements on the Product labels, and purchased the Pure Via Consumer Products at various prices set by independent retailers.   Therefore, Defendants have vigorously disputed that damages can be proven on a nation-wide Class basis.   Indeed, Defendants have denied, and continue to deny, any and all fault, wrongdoing, and liability for Plaintiff's claims. If any of Defendants' factual and legal defenses were successful, they could substantially impair the value of Plaintiff's claims.

## VI.   PLAINTIFF'S COUNSEL BELIEVES THE CLASS SHOULD BE CERTIFIED

49.    The certification of the Settlement Class for settlement purposes should be confirmed in a final approval order.

50.    The proposed Settlement Class satisfies all of the Rule 23 certification requirements.

51.    According to Defendant's records, significantly more than 40 consumers purchased Pure Via products during the Class Period.

52.    Indeed, it is estimated that the Settlement Class members number over 1.2 million.   Dahl Decl., ¶34.   This number easily exceeds the threshold for establishing numerosity.

53.    Plaintiff is a member of the Class she seeks to represent and her claims arise from the same alleged misconduct of Defendants.

54.    Plaintiff has sought and obtained remedies equally applicable and beneficial to the Settlement Class as to herself and has no conflicts of interests with other Settlement Class members.   She has diligently advanced the Action.

10

55.    Here, the determination of the following common questions will resolve issues central to the validity of Plaintiff's and Settlement Class members' claims: (i) whether Defendants' marketing, advertising, labeling, and selling of Pure Via constitute (a) an unfair, unlawful, or fraudulent practice and (b) false advertising; (ii) whether Defendants materially misrepresented to the Class members that Pure Via is "natural"; (iii) whether Defendants' alleged misrepresentations and omissions were material to reasonable consumers; and (iv) whether Defendants' alleged conduct injured consumers and, if so, the extent of the injury.

## VII.    PLAINTIFF'S COUNSEL BELIEVES THE REQUESTED FEES AND EXPENSES MERIT APPROVAL

56.    Plaintiff's Counsel respectfully requests an award of 30% of the Settlement Fund as of $1,650,000.00, which is $495,000.00, including $118,854 for reimbursement of expenses incurred in litigating the Action.   When the expenses are subtracted out, the fee award is actually $376,146 and represents 23% of the Settlement Fund.  Plaintiff's Counsel respectfully submits that this request is consistent with established precedent in this District Court and throughout the Ninth Circuit, as well as in federal courts throughout the country; fees in this range and, indeed, above this range have been consistently awarded in consumer class actions to class counsel working on a contingent fee basis and obtaining a common fund for the benefit of a class.

57.    Scott+Scott as well as Wood Law are both nationally recognized law firms that specialize in representing classes of individuals in consumer class actions in general, with specific experience with consumer fraud and false advertising.  They have qualified as class counsel in other class actions and have a proven track record of successful prosecution of significant class actions.  The respective firm resumes are attached hereto as Exhibits B and C.  They faced

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

1   Defense counsel that were likewise sophisticated and experienced consumer class

2   action litigators.

3       58.    As of December 18, 2014, Scott+Scott has devoted more than 2,196

4   hours of attorney time (1,857.2 hours), law clerk time (25.2 hours) and paralegal

5   time (313.6 hours) to this Action.  *See* Declaration of Daryl F. Scott in Support of

6   Plaintiff's Motion for Approval of Attorneys' Fee Award, Expense

7   Reimbursement, and Incentive Award ("Scott Decl.") (attached hereto as Exhibit

8   D), ¶4.  As a result, the lodestar for Scott+Scott is currently $1,065,602.00.  *Id*.  In

9   addition, Wood Law devoted over 79 hours to this Action with a resulting lodestar

10   of $24,993.50.  *See* Declaration of E. Kirk Wood in Support of Plaintiff's Motion

11   for Approval of Attorneys' Fee Award, Expense Reimbursement, and Incentive

12   Award ("Wood Decl.") (attached hereto as Exhibit E), ¶4.  Therefore the combined

13   lodestar for Plaintiff's Counsel totals $1,090,595.50.

14       59.    In reviewing my firm's time entries, I removed entries for attorneys

15   that worked less than ten hours on the case.

16       60.    Moreover, Plaintiff's Counsel also anticipates many additional hours

17   will be spent in seeing the Settlement through to completion, including final

18   approval.  As detailed above, Plaintiff's Counsel's work included:

19       a)    an investigation of Plaintiff's claims and allegations, including a

20   review of the publicly available marketing materials applicable to the allegations of

21   the case and review of the patents for the processes involved in extracting and

22   creating ingredients;

23       b)    drafting the Complaint and extensive briefing including, but not

24   limited to, briefing the oppositions to Defendants' Motion to Dismiss and Motion

25   to Deny Class Certification;

26

27

28

12

c)      throughout the Action, continual research of the law regarding the claims and defenses asserted, including, but not limited to, FDA standards on "natural" and the developing law surrounding ascertainability;

d)      propounding and negotiating discovery demands served on Defendants, and negotiating with respect to discovery served on Plaintiff;

e)      review, analysis, and organization of  tens of thousands of pages of documents produced by Defendants, including detailed Excel spreadsheets, and selecting the most relevant documents to attach to Plaintiff's Motion for Class Certification;

f)      participating in extensive discussions with defense counsel, in person and by phone, to explore each side's presentation of the case;

g)      interviewing, obtaining, and working with experts in support of Plaintiff's Motion for Class Certification;

h)      extensively briefing class certification;

i)      preparing for and taking a Rule 30(b)(6) deposition of Defendants;

j)      preparing for, and defending, two expert depositions as well as Plaintiff's deposition;

k)      extensively reviewing and preparing to take the depositions of Defendants' two expert witnesses at the class certification stage;

l)      drafting and negotiation of the Agreement and its exhibits;

m)      working with Defendants' counsel to prepare the preliminary approval papers; and

n)      working with Dahl Administration, LLC on the administration of the Settlement and Notice program.

61.      The scope and depth of this work, all performed efficiently and with a substantial result, supports approval of the fee application as supported by the Scott

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

Decl. and the Wood Decl., Exhibits D and E, respectively attached to this Declaration.

62.    The requested multiplier of 0.45 also strongly supports payment of the fee award.  Plaintiff's Counsel's request for 23% of the Settlement Fund would result in the application of a fractional multiplier of only 0.45 (*i.e.*, roughly 45% of Plaintiff's Counsel's actual lodestar).  Therefore, Plaintiff's Counsel submits that the time and labor expended by counsel and the attendant lodestar/multiplier cross-check fully support the requested attorneys' fees as fair and reasonable.

A.    <u>A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to Use in Awarding Attorneys' Fees</u>

63.    For Plaintiff's Counsel's extensive efforts on behalf of the Class, they are applying for compensation from the Settlement Fund on a percentage basis. The percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the overwhelming current trend in most circuits, including the Ninth Circuit.

64.    As set forth in Plaintiff's Counsel's Memorandum in Support of Motion for Approval of Attorneys' Fee Award, Expense Reimbursement, and Incentive Award ("Fee Memorandum"), the requested fee is a fair and reasonable attorneys' fee percentage request in common fund cases such as this and is within the range of the percentages typically awarded in consumer class actions in this Circuit.

65.    In addition, Plaintiff's Counsel's aggregate "lodestar," the number of hours worked multiplied by the applicable hourly rate, in this case is $1,090,595.

14

The 23% fee request is, therefore, far less than Plaintiff's Counsel's actual lodestar fees – and there is no multiplier.

66.     As more fully set forth in the Fee Memorandum, Plaintiff's Counsel believe that the fee request is very reasonable given the recovery obtained for the benefit of the Class, Plaintiff's Counsel's lodestar, the risks of litigation, the contingent nature of Counsel's representation, the complexity of the legal and factual questions at issue, and the extensive efforts of Counsel for Plaintiff.

**B.     Consideration of Relevant Factors Justifies an Award of a 23% Fee in This Case**

**1.     The Excellent Settlement Achieved**

67.     The $1,650,000 million cash settlement here provides an immediate and certain benefit to the Settlement Class.  This favorable settlement was achieved as a result of the extensive prosecutorial and investigative efforts of Plaintiff's Counsel, contentious motion practice and arm's-length settlement negotiations, as detailed herein.  As a result of this Settlement, millions of Class members will benefit and receive compensation for their losses and avoid the very real risk of no recovery in the absence of a settlement.

**2.     Objections by Class Members to the Settlement or Requested Fee**

68.     The Notice explains that Lead Counsel will seek an award of attorneys' fees of up to 30% of the Settlement Fund including expenses.  Pursuant to this Court's Order, all objections must be served and filed no later than January 2, 2015.  Not a single objection has been received to date, although the deadline to object has not yet passed.  Indeed, the reaction of the Class to the Settlement has been entirely positive.  This factor is relevant to a determination of the reasonableness of the fee request.

15

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

### 3. The Diligent Prosecution of this Case

69.     The requested fee is also warranted in light of the extensive efforts on the part of Plaintiff's Counsel, as outlined above, that were required to produce this Settlement.  Counsel for Plaintiff and their in-house professionals spent over 2,200 hours of time on the case, *inter alia*, conducting formal and informal discovery, reviewing and analyzing thousands of pages of documents, taking depositions, defending depositions (including expert depositions), mastering the relevant facts and dynamics of Defendants' business and products, drafting comprehensive memoranda of law concerning difficult and novel issues in connection with the motion to dismiss and class certification, formulating strategy, working with experts in order to make effective arguments, and otherwise preparing this case for trial.

### 4. The Complexity of the Action's Factual and Legal Questions

70.     Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award.  As demonstrated by the discussion above of the contested issues in the Action, had the Settlement not been reached, the complex factual and legal questions at issue would continue to be the subject of substantial analysis and dispute.  Numerous complex issues would be involved in proving liability, including whether Defendants' advertising was untrue, whether Class members relied on advertisements, whether those advertisements and statements were uniform and universal, and whether Plaintiff and Class members suffered damages, and if they did, the amount thereof.  Plaintiff was also faced with demonstrating that Class members were ascertainable and that a multi-state class of non-California consumers was certifiable.

16

71.   This case was novel and difficult in light of the scientific background required to understand the complex chemical composition and processing of the Pure Via ingredients.  The primary issue in this case concerned the marketing of a sugar alternative containing allegedly artificial and synthetic ingredients with various suggestive, but not necessarily explicit, claims that the product was all natural and made predominantly from the stevia plant.  There is no established statutory or regulatory definition of what constitutes a natural product.  Moreover, the statements challenged appeared in a variety of media, including on the Pure Via Consumer Products' labels and website, all of which included different variations and combinations of phrases, so that Plaintiff was tasked with the particularly difficult challenge of demonstrating a common message or theme.

### 5.   The Risks of Litigation and the Contingent Nature of the Representation

72.   A determination of a fair fee must include consideration of the contingent nature of the fee, the financial burden carried by counsel, and the difficulties that were overcome in obtaining the Settlement.

73.   This Action was undertaken by Plaintiff's Counsel on a wholly contingent basis.  From the outset, Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case would require.  In undertaking that responsibility, Plaintiff's Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable out-of-pocket expenses that a case such as this entails.

74.   Because of the nature of a contingent practice where cases are predominantly "big cases" lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also have to advance the expenses of

DECLARATION OF AMANDA F. LAWRENCE            Civ. No.: 2:14-cv-00670-RKG(AGRx)

the litigation.  With it often taking years for these cases to conclude, the financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.

75.     As noted above, counsel for Plaintiff committed over 2,200 hours of attorney and in-house professional time in the prosecution of the Action and fully assumed the risk of an unsuccessful result.  Counsel should be fairly compensated for their efforts and assumption of risk.  Plaintiff's Counsel have received no compensation for their services during the course of the Action and have incurred significant expenses in litigating for the benefit of the Class.  Any fee or expense award to counsel has always been at risk, completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.  Moreover, counsel for Plaintiff have incurred $118,854 in expenses alone – a substantial amount with a very real risk of not recovering any of it – in order to vigorously litigate this case to a successful conclusion.

76.     As discussed above, this case had significant risks concerning liability, causation, and damages.  Plaintiff's success was by no means assured, as both sides claimed the evidence supported their assertions.  Success hinged on Plaintiff's ability to win challenging arguments on every element of the causes of action.  Was the Settlement not achieved, Plaintiff faced years of costly and risky litigation against Defendants, with ultimate success far from certain.

77.     There was no guarantee that Plaintiff would succeed in convincing the Court or a jury that the statements made by Defendants during the Class Period regarding the Pure Via Consumer Products were false or misleading, that Class members relied on them in making their purchases, or that there were recoverable damages.  Indeed, Defendants demonstrated the vigor with which they would litigate the Action by actively contesting class certification.  There was no guarantee that the Court would grant class certification.

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

78.     There are numerous cases where Plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation.

### C.     Counsel for Plaintiff Should Be Reimbursed for the Expenses Incurred

79.     The payment of expenses to counsel who create a common fund is appropriate.   Plaintiff's Counsel have incurred expenses in the amount of $118,854.   A breakdown of the aggregate expenses incurred by category is contained in the Scott Decl., ¶5 and the Wood Decl., ¶5.

80.     The Notice states that Plaintiff's Counsel intend to apply for expenses included within the fee request.   As with Plaintiff's Counsel's fee request, not a single objection has been raised to this request, although the deadline to object has not yet passed.

81.     I have reviewed the expenses for which reimbursement is sought, and in view of the complex nature of the Action, and I believe that the expenses incurred by Plaintiff's Counsel were reasonable in amount and necessarily incurred for the successful prosecution of the Action.

### D.     Plaintiff Should Be Awarded an Incentive Award

82.     Plaintiff performed an important and valuable service for the benefit of the Settlement Class.   She met, conferred, and corresponded with Plaintiff's Counsel as needed for the efficient process of this litigation.   Declaration of Angel Aguiar ("Aguiar Decl.") attached hereto as Exhibit F, at ¶8.

83.     Plaintiff participated in numerous interviews by Plaintiff's Counsel and provided discovery, including personal information relating to her purchases of the Pure Via Consumer Products.   Aguiar Decl., ¶8.

DECLARATION OF AMANDA F. LAWRENCE                    Civ. No.: 2:14-cv-00670-RKG(AGRx)

84.     Plaintiff likewise prepared for and sat for a grueling all day deposition, during which time she was asked numerous technical and, at times, personal questions.  Aguiar Decl., ¶8.

85.     Apart from an incentive award (if granted), Plaintiff will not receive any benefits beyond those she would receive as an ordinary Class member.

86.     The diligent efforts of Plaintiff and Plaintiff's Counsel to prosecute this case, as described herein, demonstrate that Plaintiff and Plaintiff's Counsel have more than adequately represented and acted for the benefit of the Class as a whole.

87.     For the reasons set forth in this Declaration as well as in the Memorandum in Support of Plaintiffs' Motion for Approval of an Attorneys' Fee Award, Expense Reimbursement, and Incentive Awards, Plaintiff's Counsel respectfully request that the Court approve their request for an award of 30% of the Settlement Fund, or $495,000, in attorneys' fees and expenses.

88.     Attached hereto are true and correct copies of the following documents:

Exhibit A – Dahl Declaration

Exhibit B – Scott+Scott Firm Resume

Exhibit C – Wood Law Firm Resume

Exhibit D – Scott Declaration

Exhibit E – Wood Declaration

Exhibit F – Declaration of Angel Aguiar

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on this 18th day of December, 2014, in Colchester, CT.

   /s/ Amanda F. Lawrence
Amanda F. Lawrence

20